UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    :
MESHA GRAY,                                :
on behalf of her minor child, M.B.           :
                                                    :
            Plaintiff,                           :
                                                    :
            v.                                     :    Civil Action No. 07-0013 (RJL)
                                                    :
DISTRICT OF COLUMBIA,                 :
                                                    :
            Defendant.                          :
_____:

## FILING OF ADMINISTRATIVE RECORD

Attached is an index of the administrative record and the record documents themselves in this proceeding.  Consistent with LCvR 5.4(f), Defendant has redacted personal information about the minor M.B. [1]

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

_____
[1] Defendant has redacted the minor's name, date of birth, and Social Security Number.

_/s/ **Amy Caspari**_
Amy Caspari [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7794

April 13, 2007                    amy.caspari@dc.gov

Kisha Hawkins,
obo her minor child, D.C.,
 v. District of Columbia
Civil Action No. 07-00278 (JDB)

## <u>INDEX OF RECORD</u>

| **<u>Description</u>** | | **<u>Page</u>** |
|---|---|---|
| Certification of Record | - | 1 |
| Hearing Officer's Determination (HOD) issued 11/7/06 | - | 2 |
| Due Process Hearing Attendance sheet | - | 5 |
| DCPS Post Hearing Documentation Supplementation to SHO | - | 6 |
| Letter from Marcia Parker, DCPS to OGC  dated 10/30/06 | - | 8 |
| Psychological Evaluation Report dated 9/30/05 | - | 9 |
| EIP Developmental Report dated 6/7/05 | - | 16 |
| Psychiatric Evaluation dated 4/19/05 | - | 18 |
| Speech and Language Evaluation dated 10/26/04 | - | 21 |
| Fax confirmation for Post Hearing Documentation | - | 26 |
| DCPS Disclosure Statement & Motion to Compel dated 10/23/06 | - | 28 |
| Due Process Complaint Disposition | - | 30 |
| Resolution Meeting Notes for meeting held 9/11/06 | - | 31 |
| Plaintiff's Disclosure Letter dated 10/23/06 w/att. | - | 34 |
| Letter compelling DCPS witnesses dated 10/23/06 | - | 36 |
| Hearing Officer's Determination issued 9/22/05 | - | 38 |

Hearing Officer's Determination issued 12/27/05      -      41

Hearing Officer's Determination issued 7/6/06      -      46

Due Process Complaint Notice dated 8/29/06      -      51

DCPS Resp. to Due Process Compl. Notice dated 9/24/06   -   55

Hearing Notice dated 9/27/06      -      57

Compliance letter from K. Coyle to J. Smith dated 8/11/06   -   59

DCPS Scheduling Memorandum      -      62

Due Process Complaint Notice dated 8/29/06      -      66

Transcript of Hearing held 10/30/06      -      69

# CERTIFICATION OF RECORD

INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### *STUDENT HEARING OFFICE*
#### SPECIAL EDUCATION

In the Matter RE:   **C▮▮▮▮▮, D▮▮▮▮ vs. DCPS**

Case Information:       Hearing Dates: **10/30/2006**
Held at: **District of Columbia Public Schools Headquarters**
**825 N. Capitol Street, N.E.**
**Washington, D.C. 20002**
Student Identification Number:  9203375
Student's Date of Birth: ▮▮▮▮/2001
Attending School: **Center for Mental Health – Head Start**
Managing School:
Hearing Request Date(s): **08/26/2006**

## CERTIFICATION OF RECORD

I, **Shawnta Maddox, Legal Assistant of the Student Hearing Office**,

DO HEREBY CERTIFY that the attached Record of Proceeding is the entire record in

the above entitled matter as of this date, consisting  of all letters, pleadings, orders,

exhibits and depositions.

I FURTHER CERTIFY that the materials forwarded herewith are the true copy

of the original documents submitted in this matter.

EXECUTED this 26th day of April 2007.

**LEGAL ASSISTANT**
**STUDENT HEARING OFFICE**

1

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## ENFORCEMENT AND INVESTIGATION DIVISION

## SPECIAL EDUCATION DUE PROCESS HEARING

### CONFIDENTIAL

### <u>HEARING OFFICER'S DETERMINATION</u>

**STUDENT: D█████ C█████**                    **DATE OF BIRTH:█████701**

**ADDRESS: 3062 Stanton Road, S.E.**
**Washington, D.C.**

**PRESENT SCHOOL ATTENDING: Non-attending**
**HOME SCHOOL: N/A**

**DATE OF HEARING: October 30, 2006**

**Student's Representative: Douglas Tyrka, Esq.**
**Address: 1726 Connecticut Ave., N.W.**
**Washington, D.C.**
**FAX: 202-265-4264**

**School System's Representative: Saurabh Gupta, Esq.**
**Address: 825 N. Capitol Street, N.E., Washington, D.C. 20002**

DC PUBLIC SCHOOL SYSTEM 2006 NOV - 7 AM 9: 16

**INTRODUCTION:**

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on October 30, 2006, at the request of Douglas Tyrka, counsel for the parent and the student. Saurabh Gupta represented DCPS, the other party to this hearing.

**JURISDICTION:**

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446); and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300 and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

**ISSUES:**

1.    **Did DCPS deny a Free Appropriate Public Education (FAPE) to the student by failing to complete evaluations on the student and convene an MDT meeting?**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY DCPS:**

**DCPS-1-DCPS-6**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY STUDENT:**

**DC-1-DC-9**

**FINDINGS OF FACT:**

1.    The student is a five-year-old male.

2.    On July 6th 2006, a Hearing Officer's Determination ordered DCPS to convene an MDT meeting to develop an SEP (Student Evaluation Plan) before August 4th 2006. (DC-5) On August 11th 2006, counsel for the parent's associate wrote a letter to the Office of Mediation and Compliance that DCPS was in violation of this HOD.

3.    DCPS conducted a psychological evaluation on the student on August 20th 2005. (DCPS-3) A psychiatric evaluation was conducted on the student on April 19th 2005. (DCPS-4) A speech and language evaluation was conducted on the student on October 26th 2004. (DCPS-5)

3

4.  The student had attended the Center for Mental Health Head Start program, but has aged out of that program. The student's home school would be Turner Elementary School.

5.  Marsha Parker, principal of Turner Elementary School, stated in a letter to counsel for DCPS that D████ C█████ is not a student at Turner Elementary School and has not been registered as a non-attending student. (DCPS-1)

## DISCUSSION AND CONCLUSIONS OF LAW:

Counsel for the student has failed to meet his burden of proof that DCPS denied a Free Appropriate Public Education (FAPE) to the student by failing to complete evaluations on the student and convene an MDT meeting. The above Findings of Fact #3 shows that DCPS has completed current psychological, psychiatric and speech and language evaluations on the student. Counsel for the student has not met his burden of proof that the student is attending Turner Elementary School so that DCPS can convene an MDT meeting at Turner. Counsel for the parent asserts the student is attending there, but the principal for Turner Elementary School has submitted a letter that as the keeper of records at that school, this student is not a student at her school.

It is hereby **ORDERED** that:

**Counsel for the parent's request for relief is DENIED and the case is DISMISSED.**

**This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.**

Seymour DuBow, Esq.
Impartial Hearing Officer                    Date filed: November 7, 2006

Date Issued:

3

4

*Start:* 3:02
(4:02 on notice)

**ATTENDANCE SHEET**

**STUDENT'S NAME:** _____

**SCHOOL OF ATTENDANCE:** _____

**D.O.B:** _____

**HEARING DATE:** _____ **ROOM:** _____ **TIME:** _____ **A.M./P.M.**

| PARTICIPANT NAME: | ON BEHALF OF DCPS OR STUDENT: | TITLE: |
|---|---|---|
| Douglas Tyrka | student | Counsel for Parent |
| Saurabh Gupta | DCPS | Atty - Advisor |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

_____
Impartial Hearing Officer

Revised 10/17/2006

5



# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

OFFICE OF THE SUPERINTENDENT
**825 North Capitol Street, NE, 9TH Floor**
**Washington, D.C., 20002-1994**
**(202) 442-5885 – fax: (202) 442-5026**
*Street, N.E., 9th Floor*
202-442-5000  Fax paragraph  202-442-5098
*www.k12.dc.us*

October 31, 2006

Mr. Sey Dubow, Esq.,
Impartial Hearing Officer
Student Hearing Office

**Hand Delivered to Student Hearing Office**

# DCPS Post-Hearing Documentation Supplementation to SHO

Subject:        **Due Process Complaint for D█████ C██████**
DOB:             █████01
Attending School:  **Non-attending; Not registered.**

Dear Mr. Dubow:

You requested DCPS to submit any and all records of evaluations in the student's file. Additionally, you requested evidence the student was not attending his home school Turner Elementary school. This letter and exhibits 01 to 06 are DCPS' effort to comply with your request at the due process hearing held on Monday, October 30, 2006 at 3:00 pm for the above named student.

This package contains the following documents:

**DCPS-01**     Letter from *Marcia Parker, Principal Turner ES*, to
                *S. Gupta* attesting D. C██████ does not attend Turner ES
                nor is registered.

**DCPS-02**     Psychological Evaluation (9/13/2005)

**DCPS-03**     Early Intervention Program Development Report
                (6/7/2005)

6

**DCPS-04**    Psychiatric Evaluation & Diagnostic Certification Update (4/19/05)

**DCPS-05**    Speech and Language Evaluation (10/26/04)

**DCPS-06**    Fax Confirmation of this Post-Hearing Supplementation packet to Parent's counsel (10/31/06)

If you have any questions or concerns please contact me at 202-442-5178 or at Saurabh.gupta@k12.dc.us.

Sincerely,

Saurabh Gupta
Attorney Advisor

Cc:    Douglas Tyrka, Esq. *via facsimile* 202-265-4264

# DISTRICT OF COLUMBIA PUBLIC SCHOOL
**Anita J. Turner Elementary School**
**3264 Stanton Road, S.E.**
**Washington, D.C. 20020**

**Marcia S. Parker, Principal**

**Office: (202) 698-1155**                    **Fax: (202) 698-1166**

October 30, 2006

District of Columbia Public Schools
Office of General Council
825 North Capital Street, N.W.
8th Floor
Washington, D.C. 20001
Attn: Saurabh Gupta, Esq.

Re: D██████ C█████

Dear Mr. Gupta:

As keeper of records for Turner Elementary School, I affirm the D██████ C█████ is not a student at this school, nor has anyone registered him as a non-attending student.

If you have any concerns please do not hesitate to contact me at (202) 698-1155.

Sincerely,

*Marcia S Parker*

Marcia S Parker
Principal

8

**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

Office of Special Education
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

CONFIDENTIAL                                            CONFIDENTIAL

## Psychological Evaluation Report

**Student:** D▮▮▮ C▮▮▮▮               **School:** Center for Mental Health
**D.O.B.:** ▮▮▮▮▮, 2001                 **D.O.E:** 9/13/2005
**Age:** 3 years, 11 months              **Report Date:** 7/20/05
**ID Code:** 9203375                     **Examiner:** Andrea C. Hogarth, PhD

### Reason for Referral:

D▮▮▮ C▮▮▮▮ was referred for a psychological evaluation to assist in determining his eligibility for special education services.

### Background Information:

D▮▮▮ is a 3-year, 11-month old youngster who currently attends the day treatment program at the Center for Mental Health (CMH). His presenting problems at the time of intake included aggressive behavior, frequent nightmares, irritability, and difficulty separating from his mother. He had regressed with toileting and he had speech delays. D▮▮▮ was the product of a full term pregnancy complicated by maternal anemia. He weighed 7lbs, 13ozs at birth and remained hospitalized for 4 to 5 days after delivery. Neonatal complications included reflux and difficulty with eating. According to the records, developmental milestones were accomplished within normal limits.

D▮▮▮ is one of four children residing with his biological mother. The maternal family history is significant for mental retardation and the paternal family history for emotional problems, depression, and alcoholism. The family also has a history of domestic violence and child neglect. Four referrals to Child and Family Services Agency (CFSA) have been reported. CFSA found that the children were neglected as the family had failed to provide medical care and was unable to plan and provide for the children's basic need. Lack of resources was cited as a contributing factor to the neglect. CFSA continues to follow the family in order to prevent placement outside of the home.

Reportedly, D▮▮▮'s behavior problems began after he was sexually abused by an adult male while visiting with his father. According to the records, D▮▮▮ disclosed the abuse to a family member. However, when he was examined at Children's Hospital sometime after the alleged incident took place, there were no medical findings. Additionally, D▮▮▮ made no disclosure to the Metropolitan Police Department who investigated the case. CFSA's findings regarding sexual abuse were inconclusive. It was reported that the alleged perpetrator of the abuse admitted to doing "something" to D▮▮▮. It appears that D▮▮▮'s behavior problems have been attributed to the alleged abuse and he received a psychiatric diagnosis of Post-traumatic Stress Disorder.

On June 6, 2005, CMH staff administered to D▮▮▮ the Brigance Diagnostic Inventory of Early Development II. His age equivalent scores on self-help skills and emotional

Children First

9

Confidential Psychoeducational Evaluation
Student: D████ C██████
D.O.B.: ████2001
ID Code: 9203375

development ranged from 2.5 to 5.0. These age equivalent scores suggest that D████ was able to perform tasks that the average child within that age range can perform. In the social emotional domain, D██████ age equivalent score within the range of 2.7 to 3.1 also indicated average skills for children within that age range.

A Speech and Language Evaluation was completed on October 26, 2004 at Howard University Speech and Language Clinic. It was indicated that D█████ has a severe language disorder. In addition to therapy, a reevaluation to assess progress was recommended.

## Evaluation Procedures:

Classroom Observation
Teacher Consultation
Wechsler Preschool and Primary Scales of Intelligence (WPPSI-III)
Behavior Assessment System for Children, Second Edition (BASC-2)
 Teacher Rating Scales
 Parent Rating Scales

## Behavioral Observations:

D█████ was appropriately and neatly groomed at the time of this evaluation. He appeared to be average in physical development for his age. During the classroom observation, his behavior was appropriate and similar in quality to the other children in the classroom. He was observed during a structured activity with three other children and a teacher. D██████ followed the teacher's directions and responded to her questions. Peer interaction and his interaction with adults were appropriate. D█████ transitioned smoothly from one activity to the next and appropriately requested permission to leave his group when he needed to use the bathroom.

During the testing session, D█████ was distractible and inattentive, which appeared to be partly a consequence of the stimulating testing environment. The testing room was equipped with a variety of toys with which D█████ was eager to play. He had tremendous difficulty waiting until the testing session was over and required frequent redirection to focus his attention on the examiner and on the tasks at hand. The distractibility and difficulty attending to the examiner seemed to have impacted on his performance as often, D█████ did not listen to the test directions and would proceed to do the task incorrectly. Even when directions were repeated, he rushed through the task and often showed more interested in the toys on the shelf than on the task at hand. It was this examiner's impression that some of D██████ inattention was inherent in his personality. D█████ speech was sometimes unintelligible and low in volume. His affect was appropriate and despite his inattentive and distractible behavior, he remained cooperative and polite. Rapport was established and maintained throughout the evaluation.

## Test Interpretation:

On the WPPSI-III, D█████ obtained a verbal IQ of 79, a performance IQ of 76, and a full scale IQ of 76. At the 95% confidence interval, his full scale IQ falls in the range from 71 to 83 indicating that if he is retested, he would receive a score within that range 95% of the time. The

Confidential Psychoeducational Evaluation
Student: D██████ C██████
D.O.B.: ███/2001
ID Code: 9203375

full scale IQ indicates cognitive functioning in the borderline range of intelligence. His language ability as indicated by a general language composite score of 79 is also in the borderline range of functioning. At the 95% confidence interval, his true score would fall between 73 and 87. D██████ performance on the subtests was consistently below average. The specific skills assessed included word knowledge, fund of general information, verbal reasoning and concept formation, long term memory, and the ability to apply knowledge of conventional standards of behavior to solve social problems. Verbal expression was weak and seemed to be a factor contributing to his overall performance.

D██████ mother and his teacher served as informants for The Behavior Assessment System for Children, Second Edition. The rating scale is designed to assess behavioral and emotional problems in children. Scores falling within the clinically significant range suggest a high level of maladjustment in that area. Scores that fall in the at-risk range identify problems that are either not severe enough to require formal treatment but that may be a developing problem that requires monitoring.

Validity scores on both the parent and teacher reports were significant indicating that the respondents had a tendency to rate D██████ behavior excessively negative. The pattern of D██████ profile is highly unusual as the scores were consistently elevated in all the domains assessed. The parent was more likely than the teacher to perceive D██████ behavior negatively. It is hypothesized that the parent's perception of the severity of D██████ behavior may reflect behavior that is overwhelming to manage given limited resources.

The clinically significant Behavioral Symptoms Index on both the parent and teacher rating scales suggests that D██████ functional skills are significantly impaired. A review of the individual composite scales show significantly elevated scores on all scales comprising the Behavioral Symptoms index except anxiety. Both D██████ teacher and his mother identified clinically significant levels of externalizing behavior problems that include hyperactivity and aggression. According to these reports, D██████ engages in behavior that is disruptive, impulsive, and uncontrolled. He has difficulty waiting his turn, disrupts other children's play, interrupts others when they are speaking, and is overly active. He breaks other children's things, annoys them on purpose, and bullies them. Reportedly, D██████ has an unusually high number of verbally and physically aggressive behaviors. He is argumentative, defiant, and threatening to others.

Internalizing problems are in the clinically significant classification range. While D██████ anxiety-based behaviors are typical for his age, he falls in the clinically significant classification range for depression and somatization. Specifically, D██████ is reported to be withdrawn, pessimistic, and sad. He also displays health-related concerns such as complaining about pain, headaches, and stomach problems that may not have a physical basis. He sometimes misses school because of illness and makes frequent visits to the doctor. Contrasted with these internalizing behaviors, externalizing behaviors are more problematic.

Adaptive skills are in the clinically significant range. D██████ adequately performs simple daily living tasks such as dressing, bathing and feeding. However, he has difficulty adjusting to changing situations such as changes in routine. He reacts negatively when faced with these situations, has difficulty controlling and maintaining his mood and behavior, and is

Confidential Psychoeducational Evaluation
Student: D████ C████████
D.O.B.: ████2001
ID Code: 9203375

easily frustrated and upset by environmental changes. He also and takes longer to recover from difficult situations than other children his age. Social skills and functional communication are reported to be deficient.

**Summary and Recommendations:**

D████ C████████ is a 3-year, 11-month old youngster who was referred for a psychological evaluation as part of the evaluation process to determine eligibility for special education services. D████ attends the therapeutic day treatment program at the Center for Mental Health. He presented with speech delays and behavior problems. Behavioral concerns included aggressive behavior, frequent nightmares, irritability, regressive toileting, and difficulty separating from his mother.

Sexual abuse has been alleged and appears to be shaping the perceptions of D████ presenting problems and their severity. It may also have led to D████ psychiatric diagnosis of post-traumatic stress disorder. The disclosure that initiated the investigation was made to a family member. However, the finding from CFSA regarding the nature of the sexual abuse was inconclusive apparently based on the absence of medical findings from Children's Hospital. While sexual abuse is a devastating and traumatic event, it is also important to recognize that, depending on the child's age and how questions are worded, adults can inadvertently lead children to construct false memories. A police investigator trained in investigating abuse is likely to ask non leading questions that would elicit voluntary disclosure of the incident, which seems not to have occurred in D████ case. Caution is, therefore, advised in attributing D████ behavior to the trauma of sexual abuse as it may limit consideration of other factors that may be impacting on D████ behavior such as factors in important developmental contexts, cognitive problems, or other emotional difficulties not associated with the trauma of sexual abuse.

It would be helpful if the family continued their involvement with Child and Family Services and they should be encouraged to do so in order to access the available family support services. The multidisciplinary team needs to consider other available data to determine the appropriateness of special education services at this time.

Andrea C. Hogarth, PhD                    9/31/06
                                          Date
DCPS Certified School Psychologist

Confidential Psychoeducational Evaluation
Student: D███ C███
D.O.B.: ███ 2001
ID Code: 9203375

Page 5 of 7

## TEST RESULTS:

**Wechsler Preschool and Primary Scale of Intelligence – Third Edition**

### Subtest Scores Summary

| Verbal | Scaled Score |
|---|---|
| Receptive Vocabulary | 6 |
| Information | 6 |
| (Picture Naming) | 6 |
| **Performance** | |
| Block Design | 6 |
| Object Assembly | 7 |

### Composite Scores Summary

| Scale | Composite Score | Confidence Interval 95% | Percentile Rank |
|---|---|---|---|
| Verbal IQ | 79 | 74 - 86 | 8 |
| Performance IQ | 76 | 70 - 87 | 5 |
| Full Scale IQ | 76 | 71 - 83 | 5 |
| General Language Composite | 79 | 73 - 87 | 8 |

Scaled scores on the WISC-IV have a mean of 10 and a standard deviation of 3. The Composite scores have a mean of 100 and a standard deviation of 15.

Children First

13

Confidential Psychoeducational Evaluation
Student:  D█████ C████████
D.O.B.: ████/2001
ID Code:  9203375

## Behavior Assessment System for Children, Second Edition (BASC-2)
Teacher Rating Scale

### Composite Score Summary

| | T Score | Percentile Rank | 95% Confidence Interval |
|---|---|---|---|
| Externalizing Problems | 81** | 99 | 77 - 85 |
| Internalizing Problems | 64* | 91 | 58 - 70 |
| Behavioral Symptoms Index | 85** | 99 | 81 - 89 |
| Adaptive Skills | 30** | 2 | 25 - 35 |

### Scale Score Summary

| | | | |
|---|---|---|---|
| Hyperactivity | 79** | 98 | 74 - 84 |
| Aggression | 80** | 98 | 75 - 85 |
| Anxiety | 53 | 69 | 44 - 62 |
| Depression | 70** | 95 | 63 - 77 |
| Somatization | 61* | 85 | 53 - 69 |
| Atypicality | 91** | 99 | 85 - 97 |
| Withdrawal | 67* | 93 | 59 - 75 |
| Attention Problems | 75* | 99 | 70 - 80 |
| Adaptability | 39* | 16 | 31 - 47 |
| Social Skills | 30** | 4 | 23 - 37 |
| Functional Communication | 29** | 1 | 22 – 36 |

### Content Scales

| | | | |
|---|---|---|---|
| Anger Control | 79** | 99 | 71 – 87 |
| Bullying | 71** | 95 | 64 - 78 |
| Developmental Social Disorders | 76** | 98 | 68 – 84 |
| Emotional Self-Control | 80** | 98 | 73 - 87 |
| Executive Functioning | 77** | 98 | 69 - 85 |
| Negative Emotionality | 70** | 94 | 62 - 78 |
| Resiliency | 32* | 6 | 25 - 39 |

** Clinically Significant – Scores within this range suggest a high level of maladjustment.
*At-Risk – Scores in this range identifies significant problems that may not be severe enough to require formal treatment or may be a developing problem that needs careful monitoring.

Confidential Psychoeducational Evaluation
Student: D█████ C█████
D.O.B.: ███2001
ID Code: 9203375

**Behavior Assessment System for Children, Second Edition (BASC-2)**
Parent Rating Scale

## Composite Score Summary

| | T Score | Percentile Rank | 95% Confidence Interval |
|---|---|---|---|
| Externalizing Problems | 100** | 99 | 94 - 106 |
| Internalizing Problems | 73** | 98 | 66 - 80 |
| Behavioral Symptoms Index | 95** | 99 | 90 - 100 |
| Adaptive Skills | 28** | 2 | 22 - 34 |

## Scale Score Summary

| | | | |
|---|---|---|---|
| Hyperactivity | 84** | 99 | 76 - 92 |
| Aggression | 107** | 99 | 99 - 115 |
| Anxiety | 48 | 48 | 39 - 62 |
| Depression | 95** | 99 | 86 - 104 |
| Somatization | 60* | 85 | 51 - 69 |
| Atypicality | 80** | 98 | 70 - 90 |
| Withdrawal | 63* | 90 | 55 - 71 |
| Attention Problems | 71** | 98 | 64 - 78 |
| Adaptability | 34* | 6 | 25 - 43 |
| Social Skills | 29** | 2 | 21 - 37 |
| Activities of Daily Living | 41 | 17 | 30 - 52 |
| Functional Communication | 29** | 3 | 21 - 37 |

## Content Scales

| | | | |
|---|---|---|---|
| Anger Control | 87** | 99 | 77 – 97 |
| Bullying | 101** | 99 | 92 - 110 |
| Developmental Social Disorders | 86** | 99 | 77 – 95 |
| Emotional Self-Control | 95** | 99 | 87 - 103 |
| Executive Functioning | 89** | 99 | 81 – 97 |
| Negative Emotionality | 90** | 99 | 80 – 100 |
| Resiliency | 19** | 1 | 11 - 27 |

** Clinically Significant – Scores within this range suggest a high level of maladjustment.
* At-Risk – Scores in this range identifies significant problems that may not be severe enough to require formal treatment or may be a developing problem that needs careful monitoring.

Center for Mental Health, Inc.
2041 Martin Luther King Jr. Drive, SE
Washington, DC 20020
Early Intervention Program (EIP)
Developmental Report

| CONFIDENTIAL | CONFIDENTIAL | CONFIDENTIAL |

## IDENTYFING INFORMATION

| | | | |
|---|---|---|---|
| Name: | D█████ C█████ | Date of Birth: | ██████████, 2001 |
| Address: | 3062 Stanton Rd | Age: | 3 yrs., 9 mo. |
| | Washington, DC 20020 | Date of Assessment: | June 6, 2005 |
| School: | Center for Mental Health, Inc. | Date of Report: | June 7, 2005 |
| Guardian: | Kisha Chandler-Hawkins | Examiner: | Ebony Dennis, M.A. |

## REASON FOR REFERRAL

D█████ was referred for a developmental evaluation as part of his evaluation process to assist in making appropriate recommendations for educational services.

## BACKGROUND INFORMATION

The following information was gathered from a review of D█████ records at the Center for Mental Health (CMH). D█████ is a 3.9-year-old African American male who resides with his mother, mother's fiancé, two brothers and sister. D█████ is the third born child.

His mother, Ms. Chandler-Hawkins, brought D█████ to CMH in 2004. She reported that a 52-year-old man who was a friend of his fathers had molested D█████. D█████ since that time had become aggressive (i.e., throwing things) toward those around in his environment. The client was diagnosed with Post-Traumatic Stress Disorder and Expressive Language Disorder. Therapeutic interventions at CMH are focused on helping D█████ verbally communicate his needs, follow adult directions and interact effectively with peers.

## BEHAVIORAL OBSERVATIONS

On the date of testing, D█████ was neatly and casually dressed. When this examiner greeted him, he smiled and compliantly left his room. Once in the testing location, D█████ was cooperative requiring little behavioral redirection. He was task-oriented throughout the session and appeared to put forth his best effort. D█████ made appropriate eye-contact, his speech was audible and coherent and his conversation was reciprocal in nature. The results of this test are considered valid and reliable.

## TESTS ADMINISTERED

BRIGANCE Diagnostic Inventory of Early Development II
(Subtests D & G: Self-Help Skills and Social and Emotional Development, respectively)
D█████ is 1.6 years too young to be administered subtest H for Readiness.



16

## INTERPRETATION OF RESULTS

There were eight mini-subtests administered within the Self-Help Skills domain of the Brigance: Feeding/Eating, Undressing, Dressing, Unfastening, Fastening, Toileting, Bathing and Grooming. D████ performed at a developmental level of greater than 2.5 years of age on Feeding/Eating, Undressing, and Dressing. On the subtest of Unfastening, it should be noted that Delonte does not have clothing that require him to snap buttons in the back of his shirt or zip up back zippers. He performed at a 5.0 age level for Toileting. On the task of Bathing and Grooming D████ performed at 3.4 age level slightly below his expected performance.

There are three mini-subtests within the Social and Emotional Development domain of the Brigance: General Social and Emotional Development, Play Skills and Behaviors along with Initiative and Engagement Skills and Behaviors. General Social and Emotional Development measures such tasks as, self-esteem, confidence, attachment level and cooperation. D████ is performing at about a 2.8 year age level in this area presenting his most difficulty in confidence and attachment level. Play Skills and Behaviors measures such tasks as, imagination, attention span and cooperative play. D████ is performing at approximately 2.7 years of age in the aforementioned area having his greatest challenge with attention and cooperative play. Initiative and Engagement Skills and Behaviors measures skills of imitation, motivation and attention; D████ is performing at 3.1 age level on this subtest.

## SUMMARY AND RECOMMENDATIONS

D████ is a 3 year, 9 month old African American male who was referred for a developmental evaluation as part of his evaluation process to assist in making appropriate recommendations for educational services. He has a current diagnosis of Post-Traumatic Stress Disorder and Expressive Language Disorder.

Within the domain of Self-Help skills D████ is having particular difficulty with his Feeding/Eating skills. In the Social and Emotional Development domain D████ is performing at about a 2.8 year age level in the areas of General Social and Emotional Development and Play Skills and Behaviors. Given his diagnosis and his performance on this testing tool, D████ has some regressive concerns in the Feeding/Eating area and some interpersonal concerns that could relate to his trauma.

_(signature)_          6/7/05

Ebony Dennis, M.A.          Date
Therapist

Reviewed and Supervised by:

_(signature)_ Janell D. Edwards, P.D          6-7-05

Qualified Practitioner          Date

17

# THE CENTER FOR MENTAL HEALTH
## PSYCHIATRIC EVALUATION AND DIAGNOSTIC CERTIFICATION
## UPDATE

**PATIENT:** D███ C█████      **DATE:** 04/19/05

**DOB:** ████/01 (3.7 years old)      **PSYCHIATRIST:** Alberta M. Vallis, M.D.

## I. IDENTIFYING DATA/CHIEF COMPLAINT/HISTORY OF PRESENT ILLNESS:

D███ C█████ was admitted to the Center for Mental Health Day Treatment Program on 8-11-04 to address symptoms of hyperactivity, poor social skills, temper tantrums, frequent nightmares and poor communication skills. Reportedly, D███ was a victim of sexual abuse.

## II. PAST PSYCHIATRIC HISTORY:

D███ has been enrolled in Day Treatment at CMH for 8 months; he was seen at Children National Medical Center due to the sexual abuse, which occurred in January 2004. (Corrected date)

## III. PAST MEDICAL HISTORY:

Within normal limits

## IV. SUBSTANCE USE HISTORY:

NONE

## V. SOCIAL HISTORY (See Initial Psychosocial Assessment):

D███ is one of four children born to his single mother, Ms. Kisha Hawkins. Reportedly, D███ has stayed off and on with his father. After a visit with his father D███ reported symptoms indicative of PTSD due to the sexual abuse. Currently D███ lives with his mother on weekdays and visits with his godmother on weekends to provide respite for mother. This case is currently being followed by CFSA to avoid out-of-home placement.

### Family History

*Mother's Side* – Cognitive delays; Diabetes

*Father's Side* – Alcoholism and Depression

18

D█████ C█████

DOB: ███/01

## VI.    MENTAL STATUS EXAMINATION:

*General Appearance and Behavior:* D█████ was neatly groomed in long braids. He was appropriately dressed. He made fleeting eye contact. He was motoric and demanding.

*Attitude toward the examiner:* Appropriate

*Speech:* D█████ talked constantly. He has a loud, hoarse voice.

*Mood and Affect:* Euphoric

*Thought Process:* Intact, demanding and racy

*Thought Content and Perception:*

D█████ presented an aggressive, demanding and playful content. His perceptual skills are developing well.

*Cognitive Functioning:*

*Sensorium:* Clear

*Orientation:* Appropriate

*Attention/Concentration:* Both are only fair

*Memory:* Intact but not goal oriented

*Intellectual/Abstract Functioning:* Slightly below average

*Insight/Judgment:* Both are only fair

## VII.    DIAGNOSIS:

Axis I:       309.81 Post-traumatic Stress Disorder (PTSD)

Axis II:      None

Axis III:     Medical- within normal limits

Axis IV:      Stressors- Support system

Axis V:       GAF: 45

13

D████ C██████
DOB: ████01

VIII.   **SUMMARY OF FINDINGS:** D████ is the second youngest of four
children. D████ was sexually abused in 2004 and according to his mother he
continues to have recurrent nightmares.   As his communication skills have
improved he has been better able to control his aggressive behaviors.
However, he continues to have difficulty controlling his impulsive behavior,
to have difficulty concentrating, outburst of anger, difficulty getting along
with peers and siblings and to be oppositional and non-compliant with adults.

## IX.  TARGET PROBLEMS AND BEHAVIORS:

1.   Poor Impulse Control
2.   Poor communication skills
3.   Poor Social skills (aggressive behaviors)
4.   Oppositional and non-compliant behaviors

## X.    TREATMENT RECOMMENDATIONS:

1.   Continue Day Treatment CMH and review in 90 days
2.   Continue speech therapy
3.   Weekly individual therapy


_Alberta M. Vallis, M.D_

CERTIFIED BY:     Alberta M. Vallis, M.D.
TITLE:            Child Psychiatrist
DATE:             **04/19/05**

20

HOWARD UNIVERSITY
SCHOOL OF COMMUNICATIONS
DEPARTMENT OF COMMUNICATION SCIENCES AND DISORDERS
SPEECH AND HEARING CLINIC
WASHINGTON, D.C. 20059
(202) 806-6691

## SPEECH AND LANGUAGE EVALUATION

Name: D_____ C_____
Address: DCPS Headstart/
Center for Mental Health
Phone:

DOE: 10/26/04
DOB: ___/01
Age:  3
Sex: Male

## BACKGROUND/SIGNIFICANT HISTORY

D_____ C_____, a 3-year-old African American male, was seen for language and articulation evaluations on October 26, 2004 and January 27, 2005.  Speech and language evaluations were deemed necessary because of D_____ performance on the Fluharty Preschool Speech and Language Screening Test.

## CLINICAL EXAMINATION

Both formal and informal measures, in multiple settings, were used to assess communicative abilities. The speech and language evaluations and screenings were conducted in the therapy room.  During formal assessments, D_____ was cooperative. Pragmatics and play skills were evaluated informally in the classroom setting.  D_____ was able to maintain eye contact, respond to the communication of others, express personal needs, and use polite terms.  Play skills were age-appropriate as D_____ was able to appropriately manipulate toys, engage in pretend play, and engage in play with peers.

## ORAL MUSCULATURE

The purpose of examining the oral musculature is to assess structure and function of the articulators.  D_____ oral musculature and articulators were informally assessed during the preliminary screening and articulation and language evaluations.  No deformities were noted.  Facial symmetry was present and movement of the articulators was good.

## HEARING

A hearing screening was done to determine auditory sensitivity.  At 25dB, D_____ passed at all frequencies tested including: 1000 Hz, 2000 Hz, and 4000Hz in both ears.

23.

## VOICE/FLUENCY

Voice and fluency were informally assessed during screenings and evaluations.  The rate and rhythm of D███████ speech were observed to be within normal limits.  Prosody and intonation were within normal limits as well, although D█████ speaks in a low tone.  D█████ exhibited no nasal qualities of voice.  Other aspects of voice were observed to be within normal limits as well.

## ARTICULATION/PHONOLOGY

The Goldman Fristoe Test of Articulation-2 was administered to D█████ to assess articulation of sounds-in-words in the initial, medial, and final position and sound-in-sentences.  D█████ produced 57 errors. The following errors in initial, medial, and final positions of words were noted:

| Omissions | Substitutions | Distortions |
|---|---|---|
| /p/ (M, F) | y/m (M) | |
| /n/ (F) | w/b (M) | |
| /b/ (F) | y/g (M) | |
| /g/ (F) | s/f (F) | |
| /k/ (F) | y/ng (M) | |
| /d/ (M, F) | t/ch (I) | |
| /ng/ (F) | y/ch (M) | |
| /t/ (I, M, F) | d/j (I); jumping | |
| /sh/ (F) | n/j (M); pajamas | |
| /ch/ (F) | w/th; voiceless (I) | |
| /l/ (M) | w/v (I) | |
| /r/ (M, F) | y/v (I) | |
| /j/ (F) | sh/s (I) | |
| /th/; voiceless (M, F) | t/s (M, F) | |
| /v/ (F) | sh/z (M, F) | |
| /z/ (F) | v/th; voiced (I) | |
| /m/ (F) | d/th; voiced (M) | |
| | b/bl (I) | |
| | fw/br (I) | |
| | k/dr (I) | |
| | f/fl (I) | |
| | fw/fr (I) | |
| | g/gl (I) | |
| | g/kl (I) | |
| | g/kr (I) | |

k/kw (I)
p/pl (I)
s/sl (I)
p/sp (I)
t/st (I)
v/sw (I)
p/tr (I)

Age-appropriate errors include blend errors, and errors when producing the following phonemes: [f, y, r, l, s, z, sh, ch, j, v] (GFTA-2).   Substitution of /d/ or /f/ for /th/ are characteristic of African-American English dialect.

An informal phonological analysis was done using the results of the Goldman-Fristoe-2. The following phonological processes were observed:

Final Consonant Deletion
Stopping
Deaffrication
Weak Syllable Deletion
Reduplication
Consonant Harmony
Cluster Reduction
Coalescence
Backing

Processes that are not age-appropriate include weak syllable deletion, final consonant deletion, and reduplication (Shipley and McAfee, 2002).


## LANGUAGE TESTING (Preschool Language Scale-3)

The Preschool Language Scale-3 was administered to assess D████ total language skills including auditory comprehension and expressive communication.
Auditory comprehension, or receptive language, refers to a child's ability to understand information. The following results were obtained:

Raw Score: 20          Standard Score:72      Percentile Rank: 3

At a confidence level of 80%, D████ score is almost 2 standard deviations (+/- 15) below the mean score of 100. This standard score is below the average range of test takers and indicates a moderate receptive language disorder.

Receptively, D████ was able to follow simple directions ("put the bear on the table"), identify pictures ("show me the cup"), indicate body parts on himself, (where is your hand, head"), understand spatial concepts, ("put the bear in the box"), and understand the use of objects ("show me what you use to cut paper").  He had difficulty with understanding quantitative concepts ("give me one, put some here"); understanding

23

descriptive concepts, (which one is small?"), and understanding part/whole relationships, ("show me the tail of the cat").

Expressive communication skills refer to a child's ability to verbally communicate meaning effectively. When assessing D█████ expressive language skills, the following results were obtained:

Raw Score: 16        Standard Score: 68    Percentile Rank: 2

At a confidence level of 80%, D█████ score is more than 2 standard deviations (+/- 15) below the mean score of 100. This standard score is below the average range of test takers and indicates a severe receptive language disorder.

Expressively, D█████ was able to name objects, ("what is this?"), use two to three words in succession, and use one pronoun (*my* hat). He had difficulty with using inflection to ask a question, combining three or four words spontaneously, naming pictures (truck, apple), and using plurals ("what are these? Shoes hats).

## SUMMARY AND IMPRESSIONS

Pragmatics assessment revealed that D█████ demonstrates the ability to maintain eye contact acknowledge communication, express wants, and use polite terms.
Play skills were observed to be appropriate. D█████ passed the hearing screening. Informal assessment revealed that facial symmetry was present and D█████ exhibited good movement of articulators. Informal assessment of voice revealed voice and pitch were age and sex appropriate. Intonation and prosody were appropriate. Fluency was informally assessed and D█████ produced fluent speech during conversation. Rate and rhythm of speech were good. Formal evaluations were used to assess articulation, and language skills. D█████ substitutions are not all age-appropriate. Substitution errors of /m/, /b/, /g/, /f/, /ng/, and /t/ are not age-appropriate. Substitution errors of /th/ phonemes are characteristic of African-American English dialect. Blend errors are age-appropriate. Phonological assessment was informal. Phonological processes that are not age-appropriate include final consonant deletion, unstressed syllable deletion, and reduplication. On the Preschool Language Scale-3, D█████ received a total language score of 67 with a percentile rank of 1. This score is mre than 2 standard deviations (+/- 15) below the mean score of 100. The standard score is below the average range for all test takers and is indicative of a severe language disorder.

## RECOMMENDATIONS

It is recommended that D█████:
  1.  Receive individual speech and language therapy twice a week for 30 minutes a session

     Goal: D█████ will increase articulation skills to commensurate age level.

Goal: D▇▇▇ will discontinue use of the following phonological processes:
A. Final Consonant Deletion
B. Unstressed Syllable Deletion
C. Reduplication

Goal: D▇▇▇ will increase expressive language skills to a 26-month age equivalency.
Goal: D▇▇▇ will increase receptive language skills to a 30-month age equivalency.

2. D▇▇▇ be reevaluated at the end of the semester to assess the level of improvement of speech and language skills.


Ingrid K. Treadwell, B.S.
Graduate Clinician

Kimberly A. Wilson, M.S., CCC-SLP
Clinical Supervisor

Talythnia Forbes, B.S.
Graduate Clinician



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| | | | |
|---|---|---|---|
| **To:** | D. Tyrka | **From:** | Saurabh Gupta, Esq. |
| **Fax:** | 265-4~~404~~ 4264 | **Date:** | October 31, 2006 |
| **Phone:** | | **Pages:** | ___ (Including cover page) |
| **Re:** | D▆▆▆ Chandler | **CC:** | |

☐ Urgent  ☐ For Review ☐ Please Comment  ☐ Please Reply ☐ Please Recycle

•**Comments:**

DCPS  Post Hearing document supplementation to SHO

26

# hp LaserJet 9050mfp series



---

## Fax Call Report

1

---

DCPS Office of General Counsel
2024425098
31-Oct-2006 03:00 PM

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|-----|-----------|------|----------------|----------|-------|--------|
| 1366 | 31-Oct-2006 02:53 PM | Send | 92654264 | 6:25 | 21 | Success |



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| | | | |
|---|---|---|---|
| **To:** | D. Tyrka | **From:** | Saurabh Gupta, Esq. |
| **Fax:** | 265-~~~~4264 | **Date:** | October 31, 2006 |
| **Phone:** | | **Pages:** | (including cover page) |
| **Re:** | D~~~~ | **CC:** | |

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

---

•**Comments:**

DCPS  Post Hearing document supplementation to SHO

27



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Office of the Superintendent*
**Office of the General Counsel**
**825 North Capitol Street, N.E., 9th Floor**
**Washington, DC 20002**
202-442-5000    Fax # 202-442-5098
*www.k12.dc.us*

October 23, 2006

D. Tyrka, Esq.
Wash., DC

**DISCLOSURE STATEMENT & MOTION TO COMPEL**

**VIA FACSIMILE – 202-265-4265**

**Subject: Due Process Hearing – C▓▓▓▓▓, De▓▓▓**
**DOB: ▓▓▓01**

Dear Mr. Tyrka:

At the upcoming due process hearing in the above-referenced matter, scheduled for October 30, 2006, and pursuant to 34 C.F.R. 300.509(a)(3), in addition to any documents and witnesses disclosed by the parent, DCPS may rely upon any of the following witnesses/documents:

**Witnesses[1]**
Z. Johnson, Supervisor EC Special Education, C.A.R.E Ctr, DCPS, 671-0882
S. Kauffman, Case Manager, or designee(s), DCPS, 671-0882

Pursuant to 34 C.F.R. 300.509(a)(2) and 5 DCMR 3031.1(b), DCPS hereby compels the attendance of the below named individual as a necessary and material witness:

Kisha Hawkins, Parent

At the hearing, DCPS may rely upon the following documents:

**Documents**
DCPS #1 -        Due Process Complaint Disposition Documents

DCPS will and reserves the right to object to the testimony of any expert witnesses if a curriculum vitae and/or resume is not provided with the student's 5-day disclosure.

DCPS reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student as though the witness was called by DCPS.

DCPS reserves the right to rely upon and/or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case. Also, DCPS reserves the right to introduce any and all witnesses and/or documents for the purpose of impeachment and rebuttal.

---

[1] Witnesses may testify by telephone.

*Children First*

28

If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5564.

Sincerely,

Aaron E. Price, Sr., Esq.
Attorney-Advisor

cc: Student Hearing Office

*Children First*

### State Education Agency for the District of Columbia
### State Enforcement and Investigation Division (SEID)
### Special Education Programs



# Due Process Complaint Disposition

* The parties to notify the Student Hearing Office about important information concerning the outcome of the resolution meeting should use this form.
* Please return to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002, Fax number 202/442-5556.

## A.   STUDENT AND CASE INFORMATION:

Student Name: [ D████ O████ ]        Birth Date: [ ████-01 ]

    First  MI   Last

SHO Case Number: [           ]        (if applicable)

## B.   PARENT / GUARDIAN:

Name: | Kisha        Hawkins

   First              Last

Complete Address: | 3062 Stanton Road. S.E. # 103
         Washington, DC. 20020

        367-4785

Phone: | 202/726-7049 | [           ] | [           ]

   Home     Work or alternative phone no.   Fax No. if applicable

## C.   LOCAL EDUCATION AGENCY REPRESENTATIVE:

Full Name: | DCPS |        Title: | LEA

Address: | 925 Rhode Island Ave. NW
    Washington, DC. 20001

Phone: | (202) 671-0882 | (202) 673-5773

   Office       Fax

1

_X_ PUBLIC          ___DPCS CHARTER          __ LEA CHARTER          __ NONPUBLIC          ___
PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES

Meeting Confirmation Date: _____          Meeting Held: 9/11/06

Student: D_____ C_____          DOB: ___/2001  School: Non-Attending

| PARTICIPANTS: (Print Name) | PARTICIPANTS (Sign Name) | POSITION |
|---|---|---|
| Kisha Hawkins (Parent by Phone) | _signature_ | Mother |
| Sharon Millis | _signature_ | Advocate |
| Harry Brockenberry | Harry Brockenberry | Advocate |
| Desiree Remondini | Desiree Remondini | Early Childhood Special Educator |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

_____ Resolved          ✓ Unresolved

Issue: DCPS did not convene as 'SEP' Meeting within 15 days after the issuance of an HOD
~~dated 8/22/05. DCPS concurs that it did not that the meeting and offered three dates to hold the~~
SEP meeting.

DCPS offered Nov. 14th, 18th and 21st. The parent selected Nov. 15th @ 9:30 am. Parent
wishes to have meeting at Turner and DCPS agree to meet there.

° Advocate would like DCPS to fund independent evaluations.

° ~~Attempts made to schedule (MDT) meeting - contact of parent~~ Jw.

° DCPS will not conduct an independent evaluation until SEP meeting
is conducted and thereafter further evaluation will be ~~determined~~ determined.

° DCPS offers independent evaluation themselves
• Parent did not accept this offer but will cooperate with ____

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

_X_ PUBLIC        ___DPCS CHARTER        __ LEA CHARTER        __ NONPUBLIC        ___
PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd

Meeting Confirmation Date: _____  Meeting Held: ____9/1⅘/0 6____

Student: _____D█████ C████████_____

School: C.A.R.E. Center

- We do not agree with attorneys notes as follows:

- We do conduct MDT meetings with independent evaluations

- We did not discuss placement or funding of Placement.

Log for
Aaron E. Price, Sr., Esq.
111-222-3333
Oct 23 2006 7:43PM

**Last Transaction**

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Oct 23 | 7:41PM | Fax Sent | 12022654264 | 2:05 | 5 | OK |

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**October 23, 2006**

Aaron Price
Attorney-Advisor
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232
By Fax:  202-442-5097/5098

**RE: D████ C██████ (D.O.B. ███/01)**

Mr. Price:

A hearing has been scheduled for 3:00 p.m. on **October 30, 2006**, to adjudicate a due process complaint filed on behalf of the above-captioned student, **D█████ C██████**. In addition to any documents and witnesses disclosed by DCPS, the parent reserves the right to rely on the following witnesses and documents, as well as any other documents previously disclosed or offered into evidence in any other matter concerning this student.

Documents:

1. 10/23/06   Disclosure Letter
2. 10/23/06   Notice Compelling DCPS Witness(es)

**Administrative Process**

3. 09/22/05   Hearing Officer's Determination ("HOD")
4. 12/27/05   HOD
5. 07/06/06   HOD
6. 08/29/06   Due Process Complaint Notice
7. 09/24/06   DCPS Response to Due Process Complaint Notice
8. 09/27/06   Hearing Notice

**Correspondence**

9. 08/11/06   Compliance Letter, Tyrka & Houck, LLP to Judith Smith, OMC

Witnesses:

---
[1] Some witnesses may be testifying by telephone and/or use a designee.

1. Ms. Kisha Hawkins, Parent
2. Ms. Sharon Millis, Special Education Advocate & Expert
3. Mr. Keith Coyle, Associate
4. Ms. Camille McKenzie, Office Assistant
5. Mr. Michael Tchorni, Law Clerk

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

2



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**October 23, 2006**

Aaron Price
Attorney-Advisor
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232

> ### RE: D███ C█████ (D.O.B. ███/01)

Mr. Price:

Pursuant to 34 C.F.R. § 300.509(a)(2) and D.C. Mun. Regs. tit. 5 § 3031.1(b), Petitioner hereby compels the following necessary and material witnesses:

1. Any DCPS employee and/or agent who has drafted notes of any meeting or telephone conversation, which DCPS intends to submit as evidence at this hearing.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

```
┌─────────────────────────────────────────┐
│     TRANSMISSION VERIFICATION REPORT     │
└─────────────────────────────────────────┘

                              TIME  : 10/23/2006 13:20
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992


    DATE,TIME              10/23  13:14
    FAX NO./NAME           OGC1
    DURATION               00:05:57
    PAGE(S)                27
    RESULT                 OK
    MODE                   STANDARD
                           ECM
```



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

---

***Recipient:***   Aaron Price ~ OGC

***Fax Number:***

***From:***   Douglas Tyrka

***Regarding:***   D█████ C██████

***# of pages:***   27

***Notes:***   DISCLOSURES

37

(In the Matter of DC  DOB: ██/01  HOD, September 22, 2005)

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigation Division*
### CONFIDENTIAL
### Coles B. Ruff, Jr., Due Process Hearing Officer

| | |
|---|---|
| In the Matter of D████ C████ )<br>Date of Birth: ████████, 2001 )<br>)<br> )<br>Petitioner (Student), )<br>)<br>v. )<br>)<br>District of Columbia Public Schools )<br>("DCPS" or "District") )<br>Attending School: Center for Mental )<br>Health Head Start Respondent. )<br>_____ ) | **IMPARTIAL DUE PROCESS**<br><br>**HEARING OFFICER'S DECISION**<br><br>Hearing Date: September 20, 2005<br><br>Held at: 825 North Capitol St. NE<br>Washington, DC |

Hearing Participants:
Counsel for Student:

                                Douglas Tyrka, Esq.
                                5505 Connecticut Ave. NW  #174
                                Washington DC  20015

Counsel for DCPS:

                                Aaron Price, Esq.
                                Office of General Counsel
                                825 North Capitol St. NE
                                Washington, DC  20002

## INTRODUCTION:

A Due Process Hearing was convened on September 20, 2005, at the headquarters of the District of Columbia Public Schools, 825 North Capitol Street, NE, Washington, DC 20002. The hearing was held pursuant to a hearing request submitted by the counsel for the student filed June 30, 2005.

## JURISDICATION:

The hearing was conducted and this decision was written pursuant to the *Individuals with Disabilities Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17, the Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145, effective October 21, 1998.

## DUE PROCESS RIGHTS:

The student's counsel waived a formal reading of the due process rights.

1

DC18

SENT BY: HP LASERJET 3150; 2024425056; 09/22/2005 15:28 Case 1:07-cv-00278-JDB Document 8-3 Filed 04/30/2007 Page 14 of 38 PAGE 3/9

09/22/2005 15:28 2024425056 STUDENT HEARINGS O. PAGE 03/07

(In the Matter of DC   DOB: ██/01   HOD: September 22. 2005)

## SUMMARY OF THE RELEVANT EVIDENCE:

The Hearing Officer considered the representations made on the record by each counsel and documents contained in the parties' disclosure statements, which were admitted into the record. The parties discussed the matter on the record and reached an agreement.

## FINDINGS OF FACT:

The Hearing Officer finds that the agreement reached on the record by the parties is in the best interest of the student and, therefore, a Hearing Determination is hereby issued incorporating the agreement as stated.

## ORDER:

1. DCPS shall, within fifteen (15) school days of the issuance of this Order convene a student evaluation plan (SEP) meeting to determine the appropriate evaluations to conduct of the student.
2. DCPS shall, within thirty (30) calendar days of the SEP meeting. conduct all evaluations recommended at the SEP.
3. DCPS shall, within ten (10) school days of the completion of the evaluations, convene a building level multi-disciplinary team (BLMDT) meeting to review the student's evaluations and determine the student's eligibility for special education services.
4. If the student is determined eligible the MDT shall develop an individualized educational program (IEP), discuss and determine placement, and discuss compensatory education and develop a compensatory education plan if warranted.
5. If the student is eligible DCPS shall issue a prior notice of placement within five (5) school days of the MDT/IEP meeting if the recommended placement is public and thirty (30) calendar days if the recommended placement is private.
6. Scheduling of the BLMDT/IEP meeting is to be arranged through parent's counsel.
7. DCPS will be given a day for a day extension of any of the prescribed time frames in this Order for any delay caused by the student, the parent and/or their representative(s).
8. This Order resolves all issues in this case and the Hearing Officer makes no additional findings.

2

(In the Matter of DC  DOB: ███/01  HOD: September 22, 2005)

## APPEAL PROCESS:

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

Coles B. Ruff, Esq.
Hearing Officer
Date: September 22, 2005

Issued:  *9-22-05*

3

40

# District of Columbia Public Schools

## State Enforcement and Investigation Division

**Terry Michael Banks, Due Process Hearing Officer**
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

### Confidential

|  |  |  |
|---|---|---|
| D███████ C███████, STUDENT | ) | |
| | ) | |
| Date of Birth: ███████, 2001 | ) | Hearing Date: December 15, 2005 |
| | ) | |
| Petitioner, | ) | Request for Hearing: October 19, 2005 |
| | ) | |
| v. | ) | |
| | ) | |
| THE DISTRICT OF COLUMBIA | ) | Held at: 825 North Capitol Street, N.E. |
| PUBLIC SCHOOLS | ) | 8th Floor |
| | ) | Washington, D.C. 20002 |
| Respondent. | ) | |
| | ) | |
| Student Attending: | ) | |
| Center for Mental Health Head Start | ) | |

## HEARING OFFICER'S DECISION

| | |
|---|---|
| **Parents:** | Ms. Kisha Hawkins, Mother<br>3062 Stanton Road, S.E; #103<br>Washington, D.C. 20002 |
| **Counsel for Petitioner:** | Douglas Tyrka, Esquire<br>Tyrka & Houck, LLP<br>1726 Connecticut Avenue, N.W. Suite 400<br>Washington, D.C. 20009<br>(301) 951-0748, Fax: (202) 9██-6248 |
| **Counsel for DCPS:** | Aaron E. Price, Esquire<br>Office of the General Counsel, DCPS<br>825 North Capitol Street, N.E.; 9th Floor<br>Washington, D.C. 20002 |

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| Child | D██████ C████████ |
|---|---|
| Child's Parent(s) (specific relationship) | Kisha Hawkins, Mother |
| Child/Parent's Representative | Douglas Tyrka, Esquire<br>Keith Coyle, Esquire |
| School System's Representative | Aaron E. Price, Esquire |

## Jurisdiction

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

## Introduction

Petitioner is a four year-old student attending the Center for Mental Health Head Start ("CMMHS"). On October 19, 2005, Petitioner filed a *Due Process Complaint Notice* ("*Complaint*") alleging that the District of Columbia Public Schools ("DCPS") failed to comply with a Hearing Officer's Decision ("HOD"). The due process hearing was convened on December 15, 2005. The parties' Five Day Disclosure Notices were admitted into evidence at the hearing. Neither party offered oral testimony at the hearing. The parties agreed to relief for Petitioner as is described in the Findings of Fact below.

## Findings of Fact

1. Petitioner is a four year-old student attending CMMHS.[1]

2. During the hearing, the parties agreed to the following relief for Petitioner:

   a.  Within ten (10) school days of the issuance of this decision, DCPS shall convene a Multidisciplinary Team ("MDT") meeting to develop a Student Evaluation Plan ("SEP").
   b.  DCPS shall coordinate scheduling all meetings through Petitioner's counsel.
   c.  Any delay in meeting any of the deadlines attributable to Petitioner will extend DCPS' deadlines on a day-for-day basis.

## Conclusions of Law

The parties' agreement is in Petitioner's best interests and its terms will be substantially included in the order below.

---

[1] *Complaint* at 1.

3

## ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, and the representations of the parties' counsel at the hearing, this 23rd day of December 2005, it is hereby

**ORDERED**, that on or before January 25, 2006, DCPS shall convene a Multidisciplinary Team ("MDT") meeting to develop a Student Evaluation Plan ("SEP"). DCPS shall coordinate scheduling the meeting through Petitioner's counsel, Tyrka & Houck, LLP, (301) 951-0748.

**IT IS FURTHER ORDERED**, that in the event of DCPS' failure to comply with the terms of this Order, Petitioner's counsel will contact counsel for DCPS and the DCPS Office of Mediation & Compliance to attempt to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.[2]

**IT IS FURTHER ORDERED**, that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

**IT IS FURTHER ORDERED**, that this Order is effective immediately.

---

[2] If DCPS fails to contact counsel for Petitioner to coordinate scheduling the MDT meeting by a date that would make compliance with this Order feasible, the hearing officer expects Petitioner's counsel to initiate telephone calls and electronic correspondence to attempt to effect compliance within the timelines set out herein.

4

### Notice of Right to Appeal Hearing Officer's Decision and Order

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy, in accordance with 20 U.S.C. Section 1415(i)(2)(A) within thirty days of the entry of the Hearing Officer's Decision.[3]

Terry Michael Banks
Hearing Officer

Date:    December 23, 2005

Issued:    _12-27-05_

Copies to:

Douglas Tyrka, Esquire
Tyrka & Houck, LLP
1726 Connecticut Avenue, N.W. ; Suite 400
Washington, D.C. 20009
(301) 951-0748; Fax: (202) 951-4248

Aaron E. Price, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.; 9th Floor
Washington, D.C. 20002

---

[3] *See Amman v Town of Stow*, 991 F.2d 929, 931(1ˢᵗ Cir. 1993) (since the IDEA does not set a time limit for lawsuits brought under its terms, the district court must "borrow" the most analogous statute of limitations under state law); *Spiegler v. District of Columbia*, 866 F.2d 461, 463-64 (D.C. Cir. 1989)(borrowing a 30-day limitations period for review of agency orders and applying it to an appeal from a decision under the predecessor to IDEA). In the District of Columbia, the Rules of the Board of Education do not prescribe a time limit for bringing the civil action authorized by the IDEA and the Board's Regulations, 5 D.C.M.R. Section 3032.5. The D.C. Administrative Procedures Act defers to the District of Columbia Court of Appeals to set the limitation period for filing an appeal from a final agency action. D.C. Code §2-510(a). Under the Court's rules, a petition for review of an agency order must be filed within thirty days. D.C. Ct. App. Rule 15(a).

5

45

# District of Columbia Public Schools
## State Enforcement and Investigation Division
Terry Michael Banks, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

### Confidential

| | | |
|---|---|---|
| D███████ C███████, STUDENT | ) | |
| | ) | |
| Date of Birth: ████████, 2001 | ) | Hearing Date: June 13, 2006 |
| | ) | |
| Petitioner, | ) | Complaint Filed: April 12, 2006 |
| | ) | |
| v. | ) | |
| | ) | |
| THE DISTRICT OF COLUMBIA | ) | Held at: 825 North Capitol Street, N.E. |
| PUBLIC SCHOOLS | ) | 8th Floor |
| | ) | Washington, D.C. 20002 |
| Respondent. | ) | |
| | ) | |
| Student Attending: | ) | |
| Ctr. for Mental Health Head Start | ) | |

## HEARING OFFICER'S DECISION

| | |
|---|---|
| **Parents:** | Ms. Kisha Hawkins, Mother<br>3062 Stanton Road, S.E.; #103<br>Washington, D.C. 20020 |
| **Counsel for Petitioner:** | Douglas Tyrka, Esquire<br>Tyrka & Houck, LLP<br>1726 Connecticut Avenue, N.W.; Suite 400<br>Washington, D.C. 20009<br>(202) 265-4260; Fax: (202) 265-4264 |
| **Counsel for DCPS:** | Aaron E. Price, Esquire<br>Office of the General Counsel, DCPS<br>825 North Capitol Street, N.E.; 9th Floor<br>Washington, D.C. 20002 |

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| | |
|---|---|
| Child | D████ C███████ |
| Child's Parent(s) (specific relationship) | Kisha Hawkins |
| Child/Parent's Representative | Douglas Tyrka, Esquire |
| School System's Representative | Aaron E. Price |

2

47

**Jurisdiction**

This hearing was conducted in accordance with the rights established under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

**Introduction**

Petitioner is a four year-old student attending Center for Mental Health Head Start ("CMHHS"). On April 12, 2006, Petitioner filed a Due Process Complaint Notice ("*Complaint*") alleging that the District of Columbia Public Schools ("DCPS") had failed to comply with the terms of a hearing officer's decision ("HOD") and failed to provide copies of evaluations. The due process hearing was convened on June 13, 2006. The parties' Five Day Disclosure Notices were admitted into evidence at the hearing. Neither party offered oral testimony at the hearing. The parties agreed to relief for Petitioner as is described in the Findings of Fact below.

**Findings of Fact**

1. Petitioner is a four year-old student attending CMHHS.[1]

2. During the hearing, the parties agreed to the following relief for Petitioner:

    a. Within thirty (30) days of the issuance of this decision, DCPS shall convene a Multidisciplinary Team ("MDT") meeting to develop a Student Evaluation Plan ("SEP").
    b. DCPS shall coordinate scheduling all meetings through Petitioner's counsel.
    c. Any delay in meeting any of the deadlines attributable to Petitioner will extend DCPS' deadlines on a day-for-day basis.

**Conclusions of Law**

The parties' agreement is in Petitioner's best interests and its terms will be substantially included in the order below.

---

[1] *Complaint* at 1.

3

48

# ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, and the representations of the parties' counsel at the hearing, this 6th day of July 2006, it is hereby

**ORDERED,** that on or before August 4, 2006, DCPS shall convene an MDT meeting to develop an SEP. DCPS shall coordinate scheduling the meeting through Petitioner's counsel, Tyrka & Houck, LLP, (301) 951-0748.

**IT IS FURTHER ORDERED,** that in the event of DCPS' failure to comply with the terms of this Order, Petitioner's counsel will contact the appropriate DCPS Placement Specialist and the DCPS Office of Mediation & Compliance to attempt to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.[2]

**IT IS FURTHER ORDERED,** that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

**IT IS FURTHER ORDERED,** that this Order is effective immediately.

## Notice of Right to Appeal Hearing Officer's Decision and Order

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B).

_Terry Michael Banks_
Terry Michael Banks
Hearing Officer

Date:  July 6, 2006          Issued: ___7/6/06___

---

[2] If DCPS fails to contact Petitioner's counsel to coordinate scheduling the MDT meeting by a date that would make compliance with this Order feasible, Petitioner's counsel shall initiate telephone calls and electronic correspondence to attempt to effect compliance within the timelines set out herein.

4

Copies to:

Douglas Tyrka, Esquire
Tyrka & Houck, LLP
1726 Connecticut Avenue, N.W.; Suite 400
Washington, D.C. 20009
(202) 265-4260; Fax: (202) 265-4264

Aaron E. Price, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.; 9th Floor
Washington, D.C. 20002

50

**DUE PROCESS COMPLAINT NOTICE**
In re Delonte Chandler
**August 29, 2006**

| | |
|---|---|
| **Petitioner**: | Kisha Hawkins |
| **Student**: | D███ C███ |
| **DOB**: | ███/01 |
| **Current School**: | Center for Mental Health Head Start |
| **Residence**: | 3062 Stanton Road, S.E., #103 |
| | Washington, DC 20020 |

**Petitioner's Contact Information for Special Education Purposes**:
Tyrka & Houck, LLP
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

**Violations:**

1. Failure to comply with a July 6, 2006 Hearing Officer's Determination ("HOD").

**Facts:**

1. D███ has been diagnosed with an expressive language disorder and post-traumatic stress disorder.
2. DCPS has violated a September 22, 2005 and a December 23, 2005 HOD in this case.
3. A July 6, 2006 HOD ordered DCPS to convene a multidisciplinary team ("MDT") meeting to develop a student evaluation plan ("SEP") for D███ on or before August 4, 2006.
4. DCPS did not contact counsel for the Petitioner to schedule an MDT meeting to develop an SEP for D███ on or before August 4, 2006, the deadline prescribed in the August 4, 2006 HOD.
5. On August 11, 2006, Petitioner sent a written notice of non-compliance with the July 6, 2006 HOD to the Office of Mediation and Compliance and the Office of Special Education at DCPS.
6. The Petitioner has been contacted by Child and Family Services concerning D███'s need for an appropriate educational placement.
7. DCPS has not convened an MDT meeting to develop an SEP for D███ since the issuance of the September 22, 2005 HOD.
8. D███ is eligible for compensatory education for DCPS' failure to develop an SEP and conduct and review evaluations in all areas of suspected disability since October 13, 2005, the 15-school-day deadline originally prescribed in the September 22, 2005 HOD.

**Proposed resolution:**

1. DCPS to immediately fund speech and language, social history, psychoeducational, and clinical evaluations of D██████, as well as any other evaluations recommended therein.
2. DCPS to convene an MDT within ten (10) days of receiving the last of these independent evaluations to:
   a) review all current evaluations of D██████,
   b) determine D██████ eligibility for special education and related services,
   c) develop an IEP,
   d) determine an appropriate educational placement, and
   e) develop an appropriate compensatory education plan for DCPS' failure to develop an SEP and conduct and review evaluations in all areas of suspected disability since October 13, 2005, the 15-school-day deadline originally prescribed in the September 22, 2005 HOD.
3. In the event that an MDT meeting is not convened within ten (10) days of receiving the last of Delonte's independent evaluations, DCPS agrees to fund D██████ placement in an appropriate private school of the Petitioner's choosing.
4. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1. The Petitioner contends that a representative of the LEA with authority to:
   a. fund speech and language, social history, psychoeducational, and clinical evaluations of D██████, as well as any other evaluations recommended therein,
   b. convene an MDT meeting within ten (10) days of receiving the last of these evaluations, and
   c. in the event an MDT meeting is not convened within ten days of receiving the last of these independent evaluations, to fund D██████ placement in an appropriate private school of the Petitioner's choosing
   is a necessary attendee at any resolution meeting.
2. If this individual is not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.
3. The Petitioner contends that any meeting not attended by the identified individual is not a valid resolution session, but rather an informal settlement discussion.
4. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.
5. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully Submitted,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20008
(ph) (202) 265-4260
(f) (202) 265-4264

```
                TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 08/29/2006 11:32
                                    NAME  : TYRKA HOUCK LLP
                                    FAX   : 2022654264
                                    TEL   :
                                    SER.# : 000A6J693992
```

```
        DATE,TIME              08/29  11:31
        FAX NO./NAME           SHO
        DURATION               00:01:03
        PAGE(S)                04
        RESULT                 OK
        MODE                   STANDARD
                               ECM
```

# TYRKA & HOUCK, LLP

1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient:          SHO

Fax number:

From:               Keith Coyle

Regarding:          D██████ C████████

Number of pages:    4 (including cover sheet)

Notes:              Due Process Compliant Notice

54

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

D████ C████ (8/29/06)
    Petitioner
v.
District of Columbia Public Schools,
    Respondent

### District of Columbia Public School's
### Response to Due Process Complaint Notice[1]

The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney-Advisor, hereby provides its **RESPONSE** to the Administrative Due Process Complaint Notice (hereinafter "Complaint") filed on behalf of the above captioned student, pursuant to the Individuals with Disabilities Education Improvement Act (hereinafter "IDEIA"), 20 U.S.C. § 1415(c)(2)(B)(i)(I). DCPS responds as follows:

   a. **DCPS' rationale for proposing/refusing to take action identified in complaint:**
      DCPS has attempted to comply with HOD in scheduling an MDT meeting. DCPS continues its efforts in scheduling the meeting. DCPS reserves the option to supplement this response as additional information becomes available.

   b. **Option DCPS considered and reason for non-acceptance:**
      DCPS is willing to convene and SEP, and MDT meeting for the student. DCPS reserves the option to supplement this response as additional information becomes available.

   c. **Evaluation procedure descriptions:**
      N/A. DCPS reserves the option to supplement this response as additional information becomes available.

      **Key factors:**
      N/A. DCPS reserves the option to supplement this response as additional information becomes available.

   d. Consequently, based on the foregoing presentation, DCPS denies that the allegations contained in the complaint state a proposal or refusal, on DCPS' part, that impedes the child's right to a free and appropriate public education; significantly impeded the parent's opportunity to participate in the decision making process; or caused a deprivation of educational benefits.

Respectfully submitted,

---

[1] This response is submitted pursuant to 20 U.S.C. § 1415(c)(2)(B)(i)(I) and it not intended to be an answer, or substitute, as contemplated by the Federal or District of Columbia Rules of Civil Procedure. Moreover, the agency response contained herein does not bind it to or preclude it from asserting defenses now known or may become available during the course of the due process proceedings.

/Electronically Signed/
Aaron E. Price, Sr., Esq.
Attorney-Advisor, DCPS    8/24/06

## CERTIFICATE OF SERVICE

A copy of this motion and its enclosure has been forwarded to:

Parent's Counsel: Tyrka

On: 202-265-4262

/Electronically Signed/
Aaron E. Price, Sr., Esq.
Attorney-Advisor, DCPS
8/24/06

56

# District of Columbia Public Schools
### State Enforcement & Investigation Division
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



### HEARING NOTICE

| MEMORANDUM VIA: [✗] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

**TO:**     Parent (or Representative): _D. TYRKA_     Fax No.: _265-4264_

LEA Legal Counsel: _A. PRICE_

**RE:**     _C_____ D_____ and (LEA) DOB: ____/01
           Student's Name

**FROM:**     SHARON NEWSOME
             Special Education Student Hearing Office Coordinator

**DATE SENT:**  _9/27/06_

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on _8/29/06_. Please be advised that the hearing has been scheduled for:

**DATE:** _10/30/06_

**TIME:** _3:00 PM_

**AT:**     825 North Capitol Street, NE, Washington, DC
           8th Floor

**ASSIGNED HEARING OFFICER:** _____

[ ] **THIS IS A FINAL NOTICE OF HEARING:** If you wish to request a continuance of this hearing, you must submit your request i *writing on the attached form* to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[✗] **THIS IS A PROVISIONAL NOTICE OF HEARING:** The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special Education Student Hearing Office.

```
┌─────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT   │
└─────────────────────────────────────┘
```

```
                    TIME  : 09/28/2006 11:09
                    NAME  : STUDENT HEARINGS OFF
                    FAX   : 2024425556
                    TEL   : 2024425432
                    SER.# : BROH3J608601
```

```
┌───────────────────────────────────────────────────────────────┐
│  DATE,TIME              09/28  11:09                            │
│  FAX NO./NAME           92654264                                │
│  DURATION               00:00:27                                │
│  PAGE(S)                01                                      │
│  RESULT                 OK                                      │
│  MODE                   STANDARD                               │
│                         ECM                                    │
└───────────────────────────────────────────────────────────────┘
```

2006 SEP 28  AM 11: 27
OFFICE OF THE
GENERAL COUNSEL

# District of Columbia Public Schools
## State Enforcement & Investigation Division
### STUDENT HEARING OFFICE

825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



## HEARING NOTICE

MEMORANDUM VIA: [✓] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): _D. TYRKA_                    Fax No.: _265-4264_

       LEA Legal Counsel: _A. PRICE_

RE:    C‗‗‗‗‗    D‗‗‗‗‗    and (LEA) DOB: ‗‗‗/01
            Student's Name

FROM: ___SHARON NEWSOME___
            Special Education Student Hearing Office Coordinator

DATE SENT: ___9/27/06___

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_8/29/06_. Please be advised that the hearing has been scheduled for:

       DATE: ___10/30/06___

       TIME: ___3:00 PM___

58

**TYRKA & HOUCK, LLP**
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

**August 11, 2006**

Judith Smith, Esquire
District of Columbia Public Schools
Office of Mediation and Compliance
825 North Capitol Street, N.E.
By Fax:  202-442-5524

**RE:    D█████ C████████ (D.O.B. ████/01)**
**07/06/06 HOD Compliance**

Ms. Smith:

Please be advised that DCPS is in violation of the above HOD for this student.  The
parent expects DCPS to take all steps necessary to ensure that immediate compliance is
forthcoming.

Sincerely,

Keith L. Coyle, Associate
PA Bar No. 201128
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Avenue N.W., Suite 400
Washington, D.C. 20009
p. (202) 265-4260
f. (202) 265-4264

Cc:    Placement Specialist
Office of Special Education
District of Columbia Public Schools
825 North Capitol Street, N.E.
By Fax:  202-442-5517/5518

**DC59**

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME  : 08/11/2006 11:46
                              NAME  : TYRKA HOUCK LLP
                              FAX   : 2022654264
                              TEL   :
                              SER.# : 000A6J693992
```

```
DATE,TIME              08/11  11:45
FAX NO./NAME           2024425524
DURATION               00:00:29
PAGE(S)                02
RESULT                 OK
MODE                   STANDARD
                       ECM
```

## TYRKA & HOUCK, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient:        Judith Smith (OMC) & OSE

Fax number:       202-442-5524, 202-442-5517/5518

From:             Keith Coyle

Regarding:        D████ C██████ (D.O.B. ███01)

Number of pages:  2 (including cover sheet)

Notes:        Compliance letter

60

TRANSMISSION VERIFICATION REPORT

```
                              TIME  : 08/11/2006 11:41
                              NAME  : TYRKA HOUCK LLP
                              FAX   : 2022654264
                              TEL   :
                              SER.# : 000A6J693992
```

```
DATE,TIME                    08/11  11:40
FAX NO./NAME                 2024425517
DURATION                     00:00:29
PAGE(S)                      02
RESULT                       OK
MODE                         STANDARD
                             ECM
```

## TYRKA & HOUCK, LLP

1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

**Recipient:**   Judith Smith (OMC) & OSE

**Fax number:**   202-442-5524, 202-442-5517/5518

**From:**   Keith Coyle

**Regarding:**   D█████ C██████ (D.O.B. ██/01)

**Number of pages:**   2 (including cover sheet)

**Notes:**   Compliance letter

61

# STATE EDUCATION AGENCY
# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| C██████, D.      Petitioner | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | |
| DCPS | ) | |
| **Attending Center for Mental Health** | | |
| **Head Start** | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

## SCHEDULING MEMORANDUM

1.      A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2.      The complaint notice was filed on **August 29, 2006**

3.      The deadline for the resolution meeting is **September 13, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

### RESPONSE TO THE COMPLAINT

A.      *__Prior Written Notice Not Issued by the Local Educational Agency__*. If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

     1.      An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;

     2.      A description of other options that the IEP Team considered and the reasons why those options were rejected;

Rev'd. 7/6/05

      A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

    4.    A description of the factors that is relevant to the agency's proposal or refusal.

B.    Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **September 8, 2006**.

C.    ***Deficiency Notice***.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice is **September 13, 2006**.

## DUE PROCESS HEARING

    Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

    The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rev'd. 7/6/05

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUCLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

# Time Sensitive Materials Attached

**Prompt Attention: Attorney: Douglas Tyrka, Esq.**
**Parent: Kisha Hawkins**

Telephone Number: **(202) 265-4260**
Fax Number: **(202) 265-4264**

Pages: **3**
Date: **August 29, 2006**

---

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: **D̶█████ C̶██████**
School: **Attending Center for Mental Health Head Start**

The Complaint Intake Unit is responsible for providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office.  If you have questions about the attached Notice, please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if you have questions about the content of the compliant you should contact your legal counsel for further advice.

**Thank You**
**Pamela Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged.  The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME  : 08/30/2006 07:32
                              NAME  : STATE ENFORCEMENT
                              FAX   : 2024425253
                              TEL   :
                              SER.# : 000D6J436181
```

```
DATE,TIME              08/30  07:31
FAX NO./NAME           92654264
DURATION               00:00:57
PAGE(S)                03
RESULT                 OK
MODE                   STANDARD
                       ECM
```

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney: Douglas Tyrka, Esq.**
**Parent: Kisha Hawkins**

Telephone Number: **(202) 265-4260**
Fax Number: **(202) 265-4264**

Pages: **3**
Date: **August 29, 2006**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: **D██████ C████████**
School:  **Attending Center for Mental Health Head Start**

The Complaint Intake Unit is responsible for providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office.  If you have questions about the attached Notice, please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if you have questions about the content of the compliant you should contact your legal counsel for further advice.

**Thank You**
**Pamela Brown**

65

# DUE PROCESS COMPLAINT NOTICE
## In re D██████ C█████████
### August 29, 2006

| | |
|---|---|
| **Petitioner:** | Kisha Hawkins |
| **Student:** | D█████ C█████████ |
| **DOB:** | ████/01 |
| **Current School:** | Center for Mental Health Head Start |
| **Residence:** | 3062 Stanton Road, S.E., #103 |
| | Washington, DC 20020 |

**Petitioner's Contact Information for Special Education Purposes:**

Tyrka & Houck, LLP
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

**Violations:**

1. Failure to comply with a July 6, 2006 Hearing Officer's Determination ("HOD").

**Facts:**

1. D█████ has been diagnosed with an expressive language disorder and post-traumatic stress disorder.
2. DCPS has violated a September 22, 2005 and a December 23, 2005 HOD in this case.
3. A July 6, 2006 HOD ordered DCPS to convene a multidisciplinary team ("MDT") meeting to develop a student evaluation plan ("SEP") for D█████ on or before August 4, 2006.
4. DCPS did not contact counsel for the Petitioner to schedule an MDT meeting to develop an SEP for D█████ on or before August 4, 2006, the deadline prescribed in the August 4, 2006 HOD.
5. On August 11, 2006, Petitioner sent a written notice of non-compliance with the July 6, 2006 HOD to the Office of Mediation and Compliance and the Office of Special Education at DCPS.
6. The Petitioner has been contacted by Child and Family Services concerning D█████ need for an appropriate educational placement.
7. DCPS has not convened an MDT meeting to develop an SEP for D█████ since the issuance of the September 22, 2005 HOD.
8. D█████ is eligible for compensatory education for DCPS' failure to develop an SEP and conduct and review evaluations in all areas of suspected disability since October 13, 2005, the 15-school-day deadline originally prescribed in the September 22, 2005 HOD.

**Proposed resolution:**

66

1. DCPS to immediately fund speech and language, social history, psychoeducational, and clinical evaluations of D█████, as well as any other evaluations recommended therein.
2. DCPS to convene an MDT within ten (10) days of receiving the last of these independent evaluations to:
   a) review all current evaluations of D█████,
   b) determine D█████ eligibility for special education and related services,
   c) develop an IEP,
   d) determine an appropriate educational placement, and
   e) develop an appropriate compensatory education plan for DCPS' failure to develop an SEP and conduct and review evaluations in all areas of suspected disability since October 13, 2005, the 15-school-day deadline originally prescribed in the September 22, 2005 HOD.
3. In the event that an MDT meeting is not convened within ten (10) days of receiving the last of D█████ independent evaluations, DCPS agrees to fund D█████ placement in an appropriate private school of the Petitioner's choosing.
4. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1. The Petitioner contends that a representative of the LEA with authority to:
   a. fund speech and language, social history, psychoeducational, and clinical evaluations of D█████, as well as any other evaluations recommended therein,
   b. convene an MDT meeting within ten (10) days of receiving the last of these evaluations, and
   c. in the event an MDT meeting is not convened within ten days of receiving the last of these independent evaluations, to fund D█████ placement in an appropriate private school of the Petitioner's choosing
   is a necessary attendee at any resolution meeting.
2. If this individual is not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.
3. The Petitioner contends that any meeting not attended by the identified individual is not a valid resolution session, but rather an informal settlement discussion.
4. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.
5. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully Submitted,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20008
(ph) (202) 265-4260
(f) (202) 265-4264

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION DEPARTMENT


HEARING OF

D█████ C█████████


HEARING DATE:
October 30, 2006


Hearing Officer Seymour DuBow


Transcribed by
LEGAL PERSONNEL, INC.
(301) 277-5711

## APPEARANCES

Hearing Examiner DuBow

Douglas Tyrka, Attorney for Parent

S. Gupta, Attorney Advisor for the District of Columbia Public School

70

1                                         PROCEEEDINGS

2                                         [ON THE RECORD]

3            HEARING EXAMINER:  We're on the Record.  Today is October 30th, 2006,

4      administrative hearing for D████ C█████ who was born ███/01.  I'll ask the parties to

5      introduce themselves for the record.  Mr. Gupta?

6            MR. GUPTA:  I'm sorry, good afternoon, Saurabh Gupta, DCPS, attorney

7      advisor.

8            MR. TYRKA:  Good afternoon, Douglas Tyrka, counsel for the parents.

9            HEARING EXAMINER:  Okay.  This hearing is being conducted pursuant to the

10     individual disclosed education (inaudible), its amendments of 1997 and 2000.  It hasn't

11     changed around here either.  And besides the governing partial hearing officer and

12     another employee of DCPS related to the parent other than through the hearing process,

13     I'll hear both sides and act only on the evidence presented.  Is the formal reading of rights

14     waived?

15           MR. TYRKA:  Yes.

16           HEARING EXAMINER:  Formal reading of rights is waived and my decision

17     will be within ten (10) days.  Preliminary matter, I have documents labeled one through,

18     is it nine (9)?

19           MR. TYRKA:  Yes.

20           HEARING EXAMINER:  Nine for the Parent and for DCPS I have a disclosure

21     letter with document - one document.  Enter it into the record at this time; any other

22     preliminary matter?  If not, opening statement.  Mr. Tyrka?

1      MR. TYRKA: Yes, sir.  From a series of HOD's that we have disclosed as three,

2    four and five, DCPS has been ordered, going back a year now,  to simply to hold an SUP

3    meeting – and to determine what evaluations Delonte needs and to evaluate accordingly.

4    They have repeatedly failed to do so.  Most recently, it appears that they violated the

5    HOD of July 6th, '06, which is Item No. 5, and accordingly we're asking the right of an

6    HOD to order another set meeting at DCPS funding in evaluations, in this case Speech

7    Language, Social History and Psycho Ed and Clinical.

8      HEARING EXAMINER:  Has this student been found eligible?

9       MR. TYRKA:  No.

10      HEARING EXAMINER:  OK, so it's for eligibility purposes.

11      MR TYRKA:  Yes.

12      HEARING EXAMINER:   All right.  Mr. Gupta?

13      MR. GUPTA:  DCPS contends that since the last HOD which was the July 2006,

14    we've made efforts to comply.  But as of the new school year, the student is not at the

15    school that is alleged in the Complaint anymore nor is he registered or nor attending at

16    his home school which would be Turner Elementary School...    So, in an effort to

17    comply, even if we infer – trying to comply - which we are, we don't know how to locate

18    the student.  He's not at any – so - where do we set up the SEP meeting at?

19      HEARING EXAMINER:   Where is the -- where is the hearing notice?

20      MR.TYRKA:  The hearing notice says he's at the Center for Mental Health Head

21      Start, which is at the Care Center.

22      HEARING EXAMINER:  No, no, wait.  Well that's – No. 6?

23      MR. TYRKA: The Complaint?

4

72

1         HEARING EXAMINER: Yes. Six?

2         MR. GUPTA: Six, yes sir.

3         HEARING EXAMINER:  Student school, Center for Mental Health, Head Start,

4    right.  So you're saying he's not there.

5         MR. TYRKA:  He's not there and there -- Petitioner claims he's at Turner but

6    he's not at Turner, either.  The Care Center had through the resolution meeting held in

7    September did schedule a meeting for November 15th at Turner –

8         HEARING EXAMINER: Yeah.

9         MR. TYRKA:  But Turner's in a weird spot – it's like how are they supposed to

10   do an MDT meeting on a student who is not attending their school.

11        HEARING EXAMINER:  That's number one on yours?  Oh, no.  What, the

12   resolution meeting is No. 1, the 9-11-06?

13        MR. GUPTA:  That's -

14        MR. TYRKA:  Yes.  It's the Resolution (inaudible).

15        MR. GUPTA:  Yes.

16        HEARING EXAMINER:  And that's where they -- that was done at Turner?  Was

17   that –?

18        MR. GUPTA:   That was at Head Start, I believe.  The Resolution --

19        HEARING EXAMINER:  That was at Head Start?

20        MR. TYRKA:  Hearing Officer, you see, there's no mention in the resolution

21   notes there being any problem with locating D█████.  There's no mention in DCPS's

22   response to the Complaint –

1              HEARING EXAMINER:  Well, wait, wait.  This one was held, 9-11-06, was

2      held at the Care Center, right?

3              MR. TYRKA:  Yes.

4              HEARING EXAMINER:  So how – where -- how did Turner get into the

5      situation – what's Turner?

6              MR. GUPTA:  Because the student's five (5) now.  He should be in school.

7              MR. TYRKA:  He's age --

8              HEARING EXAMINER:  That's the home school?                          MR.

9      GUPTA:  Yeah.

10             MR. TYRKA:  Correct.

11             HEARING EXAMINER: And where is the student?

12             MR. TYRKA:  At first – this was this first I've ever heard of any complaint about

13     locating him – as far as I know, he is at Turner.

14     MR. GUPTA:  We didn't disclose anybody from Turner but we'd like reserve the right to

15     have a rebuttal witness from Turner.

16             MR. TYRKA:  Here's the problem, we have a response to a complaint – well,

17     first off, we have a Complaint.  We have no notice of insufficiency regarding the school –

18     the statement of where he is at school.  Then we have the response to the Complaint

19     which makes no mention of any problem with locating the child.  We have the resolution

20     meeting in which DCPS never mentions there's any problem locating the child.  We have

21     an HOD, (inaudible) HOD, which explicitly says -

22             HEARING EXAMINER: Which one of the HOD's?

23             MR. TYRKA:  This is the most recent one which is our number --

1          HEARING EXAMINER: Six?

2          MR. TYRKA:  Five.

3          HEARING EXAMINER: Five?

4          MR. TYRKA:  Yes.

5          HEARING EXAMINER:  What does that say?

6          MR. TYRKA:  On the second to last page, page four (4), it says any delay in

7    meeting any of deadlines in this Order because of Petitioners absence or failure to

8    respond promptly to scheduling requests, etc. etc., DCPS shall document -- it's a day for

9    day clause.  But it says DCPS shall document affidavits and proofs of service for any

10   delays caused by Petitioner or Petitioner's representative.  The Order specifically states

11   that to avoid just this kind of conflict because we don't have anything of that nature from

12   DCPS.  Furthermore, as always, we have the coordination of all meetings through

13   Petitioner's counsel.  If there's any problem at all finding D█████ they could have

14   contacted us at any point because essentially response (inaudible) the resolution --

15         HEARING EXAMINER:  So to your knowledge, he's at Turner.

16         MR. TYRKA:  To my knowledge, he is registered at Turner and therefore

17   assumed attending there.

18         HEARING EXAMINER: And your position is that he's not at Turner?

19         MR. GUPTA:   He's not at Turner.  As of twenty (20) minutes ago, he was not at

20   Turner.

21         HEARING EXAMINER:  Not registered at Turner?

22         MR. GUPTA:  Not registered, not attending.

7

75

1           MR. TYRKA:  But I'm saying, they have – they have waived their (inaudible).  I

2   mean if - I mean there's not --

3           HEARING EXAMINER: Well, let's get to the chase stuff.  What you want is a

4   meeting to determine what evaluations?

5           MR. TYRKA:  Actually, no.  At this point, I just want the independent evals.  I

6   mean, we have the HODs going back to September '05.  It seems kind of silly at this time

7   to hold an SEP meeting.   And it's never been done.  And they certainly can't say that

8   there was a problem over the last year of finding him.  So at this point, I say, let's just do

9   an independent eval.

10           HEARING EXAMINER: Where was he last year?

11           MR. GUPTA:  He was at Pearson (phonetic).

12           MR. TYRKA:   So at this point, let's just view the independent evals and get this

13   – and determine whether he's eligible or not.  He's been waiting a year just to come to

14   decide what evals are needed.

15           MR. GUPTA:  My response to SC at Turner who does have his file but does not,

16   cannot locate a student to match up with the file states that there's a Psycho Educational

17   from 2005, there's Speech and Language from 2004, and additionally, the process isn't –

18   the process is for the SEP team, especially for a child of this age to determine what evals

19   are needed for him.  He's been through the system a couple times and they haven't

20   determined whether he's eligible or not.  He's not eligible – as of right now, he's not

21   eligible for special education.  So, I think the SEP team needs to decide what action to

22   take to decide --

1          HEARING EXAMINER: You mean they had an MDT eligibility meeting

2    sometime in 05?

3          MR. TYRKA:  Not that I know of.

4          MR. GUPTA:  I don't know.  And I'm not saying they had or had not, I'm just

5    saying he is not a Special Ed student right now.

6          HEARING EXAMINER: Well I understand that.  Mr. Tyrka is not disagreeing

7    with that, right, he's not -- there's been no eligibility.

8          MR. TYRKA:  Correct.  (Inaudible) needs an Order --

9          HEARING EXAMINER:  So, if that's what they want, that's what they want.

10   But you're saying they've done some evals on this student?

11         MR. GUPTA:  The SEC at Turner told me there is a Psycho Ed, Educational and

12   Speech and Language.  Speech and Language looks like it was independent in '04

13   because it was done at Howard University.  Psycho Educational was done by DCPS and

14   then she said there's one that I've not heard of it's called a EIP.  To her, she said it looked

15   like a psycho-educational that was done at the Department of Mental Health.  I've never

16   heard of the term EIP but that's what she said it was called.

17         HEARING EXAMINER:  I don't know what it is either, okay so

18         MR. GUPTA: That was in June of 2005

19         HEARING EXAMINER:  So the notion that this child doesn't have any

20   evaluations is not true.

21         MR. TYRKA:  All that is before the September 05 HOV which, all these are

22   agreements on the record – I mean going back – we have DCPS counsel coming back to

23   the table – and they're doing an agreement with SEP meeting and not do it.  So now

9

1  we're getting, and it couldn't be any less minute than this. The DCPS coming to the table

2  and saying, oh, we have this, we have that and the other thing. And this way we have

3  disclosure rules. This way we have responses. This way we have resolution rules.

4  Ours did not intend that a party would be showing up on the day of the hearing making a

5  bunch of entirely new allegations.

6      MR. GUPTA: We only present information as it becomes apparent to us and, I

7  mean, if counsel himself doesn't know the student is not attending Turner, then how is

8  DCPS supposed to know?

9      MR. TYRKA: I'm not conceding that he's not attending Turner.

10  [LONG SILENCE]

11      HEARING EXAMINER: I don't understand this. The resolution meaning says,

12  if you look on the first page, says: first, advocate would like DCPS to fund independent

13  evaluations. Then you go to the next one. DCPS will not conduct independent

14  evaluations or SEP meeting. It is conducted and there after further evaluation to be

15  determined. And the next one. DCPS offers independent evaluations themselves... What

16  does that mean?

17      MR. TYRKA: I was similarly mystified. I don't know what it means. I think

18  maybe the word "independent" was not supposed to be in there, and maybe they're

19  saying it would be, I don't, I don't know.

20      HEARING EXAMINER: Although probably, you were saying it probably means

21  DVS offers to do evaluations themselves.

22      MR. TYRKA: That's what I'm thinking, but I'm only guessing, because it's --.

23      MR. GUPTA: I don't think independent was supposed to be in there.

1          HEARING EXAMINER: Yeah, okay.

2          MR. TYRKA:  And then we have, you know, we say that we're not dismissing

3    our complaint on that basis, but we would cooperate if any of it has been scheduled,

4    which they did not, and again, the HOD says, (inaudible), you know, just, pick up the

5    phone, send us one invitation, and if there were any problem finding D██████, they could

6    say, Hey we have a problem locating him, have him give DC – you know, etcetera,

7    etcetera.  There are lots of ways to do this.  DCPS did not do it, so.  Any idea about them

8    not being able to find them, well, it's really irrelevant.  Because they're supposed to

9    schedule the SEP through counsel in the first place.

10         MR. GUPTA:  And they – Sandra Gossen (phonetic) is the person at the Care

11   Center who will testify that they – on 9/11 they scheduled a meeting at Turner for

12   November 15th.  So.

13         HEARING EXAMINER:  All right.  I'll hear your witnesses.  Do you have

14   anybody?

15         MR. TYRKA:  No, but, I will –

16         HEARING EXAMINER:  -- Can you submit it on the Record?

17         MR. TYRKA:  Yes.  But I'm going to object to a witness who is going to testify

18   about something which is not stated in their response.

19         HEARING EXAMINER:  I mean, is this what witness disclosed?

20         MR. GUPTA:  Witness –

21         MR. TYRKA:  Another question, but –

22         HEARING EXAMINER:  Which one is that?

23         MR. GUPTA:  Sandra Johnson.

1            HEARING EXAMINER:  From the Care Center.

2            MR. GUPTA:  Yup.

3            MR. TYRKA:  So, the issue –

4            HEARING EXAMINER:  But there's nobody from Turner at this –

5            MR. GUPTA:  No, nobody from Turner is listed on there.  We didn't know he

6    was going to be at Turner.

7            MR. TYRKA:  So not only does it not say it is in response, but again, the HOD

8    explicitly says, that the disputes over whether or not an invitation went out will be

9    resolved by the documents.  And the reason, Mr. Banks, is that rarely, Mr. St. Clair, is the

10   reason do that is to avoid just this kind of thing because it's fundamentally unfair for

11   DCPS not to put the document in the record and show up with nothing, and then put on

12   Sandra Johnson who is a very, very experienced witness, testifies all the time.  And put

13   on somebody to testify and ask the question that does a document exist.  She'll say, oh,

14   yeah, it does.  I mean, it's just fundamentally unfair.

15           MR. GUPTA:  How do we know you're not holding back the document, it's your

16   burden.

17           MR. TYRKA:  You know what?  I'm going to continue to address my comments

18   to the hearing officer, but what I'm talking about is a HOD that explicitly says – this is

19   how we're going to work with disputes to avoid this kind of thing.  I don't think it's fair

20   to the hearing officer to have to make credibility determinations.  And our document

21   needs to be produced.

22           MR. GUPTA:  And our response also reserves the option to supplement our –

23   supplement our answers in the response.

1          HEARING EXAMINER:  Where's your response?

2          MR. TYRKA:  And no supplement has been delivered.

3          HEARING EXAMINER:  Which one are you referring to, sir?

4          MR. GUPTA:  I guess he disclosed that as number seven (7)

5          HEARING EXAMINER:  No. 7.

6    [LONG SILENCE]

7          HEARING EXAMINER:  Well  Mr. Tyrka, that section Mr. Banks, day for day –

8          MR. TYRKA:  Um-hum.

9          HEARING EXAMINER:  -- Really isn't applicable in this situation.  I mean, we

10   don't have, it's not that the parents didn't do any delay.  That's not the issue.  Then his

11   dad would come about if there were some delay from the parents' side, right?

12         MR. TYRKA:   I thought it was the argument; I'm not sure where the argument

13   is.

14         HEARING EXAMINER: I understood the argument to be, correct me if I'm

15   wrong, that the student is no longer at the home school so they can't evaluate – is not able

16   to evaluate him.

17         MR. TYKER:  I thought – I understood –

18         HEARING EXAMINER:  Is that?  Okay.  One.  And two, that they've done some

19   evaluations, I don't know how extensive of whatever they've done but they've done

20   some, is your argument?

21         MR.GUPTA:  That is the argument.   I guess to the extent that they have done

22   evaluations is kind of moot since they -- that wasn't  directly pled, because once -- the

1    proposed resolution is to have a ideal resolution for DCPS to conduct an SEP meeting

2    and the SEP team decides the evaluations then, so forth, we move forward from there.

3        HEARING EXAMINER: Well, if DCPS has already done some of these

4    evaluations –

5        MR. GUPTA: Exactly. Exactly.

6        HEARING EXAMINER: I mean at least the ones essential for making your

7    basic eligibility decision. Which I assume is the psycho-ed and the speech and language

8    and maybe social history; I don't know whatever he meant. Those usually are the key

9    ones, you would agree, usually, unless it's recommended, for a clinical and a psycho-ed.

10    Usually that's what starts, starts it, right?

11        MR. TYRKA: Yes.

12        HEARING OFFICER: Is he saying they had already done in 2005?

13        MR. GUPTA: That's what I've been told, yes. That's what I'm proffering from

14    the SEC at Turner.

15        MR. TYRKA: That's before the September HOD which is that first one that

16    orders. The SEP –

17        HEARING EXAMINER: It probably is before, but at the point, I guess my

18    concern is, I don't like to test a student again, who has already been tested. And I mean

19    that makes sense to me if there's one out there, and it's current.

20        MR. TYRKA: Absolutely, but we also know that with younger children they

21    often recommend much tighter gaps between evals. Very often with young children they

22    say –

23        HEARING EXAMINER: Well, it depends – it depends.

1          MR. TYRKA: -- Test by the year.

2          HEARING EXAMINER: You cannot, especially on a psycho-ed, you cannot,

3     especially if you use (inaudible). You cannot test within a year. So, I don't know. I

4     have no idea. I have no documents in front of me, so what they have, what they've done.

5          MR. TYRKA: Well that's, that's our problem. And we've – we've all been

6     many times in a situation -- well, first off, I wanted to get to Sandra Johnson. I

7     understand the other arguments that could have been made by DCPS. But my

8     understanding of why DCPS wanted to call Ms. Johnson was to talk about a meeting

9     invitation. And that's why I was pointing out the clause in Mr. Banks' Order. Because

10    that says – that kind of dispute gets resolved through the documents, not through

11    witnesses. As far as the other arguments, unfortunately, we have all been in the position

12    too many times of DCPS – I'm sure his counsel believing it to be true. But counsel

13    coming in with the representation that an evaluation has been done, and I always say,

14    "You know, let me see it." I never believe an evaluation has been done until I have it in

15    my hand. Because unfortunately, too often miss-information gets into the hands of

16    counsel. And so I don't think we can take a representation – I mean counsel has not even

17    seen this evaluation.

18         HEARING EXAMINER: Well, let me ask – let me ask you this counselor for

19    DCPS. Is it possible to provide to this hearing officer a copy of the 2005 evaluations to

20    me and to counsel for the parents so we can see what it has been done, how recent it is,

21    how comprehensive it is, and, because you're saying it has been done? And second of

22    all, can you supply to me any enrollment, attendance – I mean the student has to be

23    enrolled at the beginning of the school year. Any proof that he's not enrolled? Or proof

15

83

1    he is enrolled at Turner?   I mean, otherwise,  I basically – I mean, Ms. Johnson doesn't

2    help the situation as far in my mind because Ms. Johnson is a Petitioner, we need

3    somebody from Turner.

4            MR. GUPTA:  Yeah, Ms. Johnson's only testifying to one thing - that she –

5            HEARING EXAMINER: I know, I'm saying, but the key issue, the key issue that

6    you're raising –

7            MR. GUPTA:  -- Scheduled a meeting.

8            HEARING EXAMINER:  The key issue that you're raising it seems to me is, that

9    alternative, one, you've done the evaluations.  If you have done it then it's just about time

10   to have a meeting.  If you haven't done the evaluations, then we need to evaluate the

11   student.  But you're saying he's not there.  So you can't evaluate him.  Is that what you're

12   saying?

13           MR. GUPTA: Exactly.

14           HEARING EXAMINER:  Well --

15           MR. TYRKA:  But that's --

16           HEARING EXAMINER:  -- And he's saying that the child is there.

17           MR. TYRKA:  But I'm, but I'm, but I'm saying something else.  The first thing

18   I'm saying is as far as I know.  Now, again, I was just presented with this objection

19   literally minutes ago, when counsel sat down at this table.  I had never heard there had

20   been any problem in locating the little boy.  However, my other argument is that,

21   wherever he is, is actually irrelevant.  As the Order was – schedule an SEP meeting with

22   counsel.  Had they done that, he would have been there.

23           HEARING EXAMINER:  I understand that.

1         MR. TYRKA: Sure. Okay.

2         HEARING EXAMINER: But if they'd done the evaluation – you don't need an

3    SEP meeting if they'd done the evaluations.

4         MR. TYRKA: Sure. But we know they haven't – there's not even a

5    representation they'd done all of them.

6         HEARING EXAMINER: Well, I don't know what they've done.

7         MR. TYRKA: Well, I think we heard speech language.

8         HEARING EXAMINER: I heard speech language and psycho ed.

9         MR. TYRKA: That's what I heard, too.

10        HEARING EXAMINER: Okay, and there may be social history, I don't know.

11   But, well, usually that's all you need, is just three (3).

12        MR. TYRKA: Well, in this case for this child we're also asking in our leave,

13   we've also asked for a clinical because he has a behavioral.

14        HEARING EXAMINER: Yes, but I don't know what psycho ed said, if psycho

15   ed recommended a clinical, it's one thing. And I don't know if there's – it's a

16   comprehensive – you know, they are now doing this thing called a comprehensive

17   psychological.

18        MR. TYRKA: Sure.

19        HEARING EXAMINER: I don't know what it is.

20        MR. GUPTA: Well maybe we will find it.

21        HEARING EXAMINER: Okay, so I don't know but I'm saying, it may be, if it is

22   then the clinical's in there.

23        MR. TYRKA: I understand.

1      HEARING EXAMINER: So I have no idea what it is. So, how can I rule on this,

2    I mean, until I see if you can provide to counsel and to me.

3      MR. GUPTA: I can call the SEC at Turner and try to get it faxed over as soon as

4    possible, I don't know –

5      HEARING EXAMINER: I mean I don't need it today. But I'm just saying you

6    can submit it to me and I'd have a chance to review it to see whether, in fact, I mean you

7    don't have any witnesses and I mean you're going to submit it on documents, right?

8      MR. TYRKA: Correct.

9      HEARING EXAMINER: So, but if the evaluations are done, I'm not going to

10    order new evaluations if they've already been done and they are current.

11      MR. TYRKA: Here, but I would like an opportunity to – if we have any problem

12    with the evaluation, I mean -

13      HEARING EXAMINER: Well, if you have problems with the evaluation then

14    you're entitled to do – go the independent evaluation – you know there's a specific

15    regulation that deal with that.

16      MR. TYRKA: There is, but I want to -- my concern is this. We've been here with

17    this kid many times. I think if there was an evaluation out there and it was, I mean, I

18    can't remember what happened, what led to the settlement in September 05. For all I

19    know we knew about the eval then and we said this thing's a piece of junk and we

20    disagreed to be gone with it. My concern is that, you know, if this comes, if this from

21    that long ago when we've had all these hearings since then, which all determined to start

22    fresh, I'm just skeptical that there's going to be something from his past that's really

23    useful.

18

86

1        HEARING EXAMINER:  Both of these HODs are basically agreements.

2        MR. TYRKA: Yes.   I just find it a little bit hard to believe that, this thing was out

3    there and it was adequate that counsel - DCPS counsel before - given all these

4    opportunities didn't present it, and have it do away with that issue.  Obviously, we

5    wouldn't give on settling to an SEP if the psycho-ed already existed.

6        MR. GUPTA: From what I read, the September one is SEP and the December and

7    July ones were for NDT meetings.   So I don't know if that's –

8        HEARING EXAMINER:  But I mean that's, but I mean basically all the hearing

9    officer did was incorporate an agreement that both sides have agreed on.

10       MR. GUPTA:  Right.

11       HEARING EXAMINER: And so probably there was no evidence taken.  There

12   was very little done, so none of this would have come to the floor.

13       MR. TYRKA:  Oh, I'm sure.  It wasn't litigated.  It wouldn't have come to the

14   floor in that either DCPS counsel would have disclosed it or they would have, you know,

15   picked up a phone and said hey, Doug, you already did ought to get a psycho ed or

16   something like that, you know.  I mean there'd be, I think it can be resolved on that.  I

17   don't see DCPS settling to the --

18       HEARING EXAMINER:  I have no idea.  But I think we can find an answer to it,

19   that is if you can provide to me within a couple days a copy of the -- what evaluations

20   they have done, and if they haven't done some, then I'll order an independent for those

21   that aren't done.  And then schedule a meeting within the fifteen (15) school days from

22   receipt, but if they had done them, and they seem to be current and you don't have any

23   objection to them, then I'll go ahead and schedule an MDT meeting.

1          MR. TYKRA:  Yes.

2          HEARING EXAMINER:  And let's get this thing settled already it's gone around

3     long enough.

4          MR. GUPTA:   In the issue of the student not being there, I mean the burden's on

5     them to prove that he is there.

6          HEARING EXAMINER: Well, I don't know if you can prove that.

7          MR. TYRKA:  It's also not true, the burden's still on us after they have – again

8     they've waived this five times over and that is not what Schaefer says.

9          HEARING EXAMINER: Well, the thing is, I also asked if the student is there or

10    not. Because, obviously, if he's not there, then I can't get a proper MDT team.   I mean

11    we have people who don't know the student.  Decisions are supposed to be made by

12    people who know the student or somehow – I mean if he hasn't ever been at Turner, he

13    went from the Care Center somewhere else, then let's figure that out, but I can't – but if

14    he's been at Turner, see I can't get any witness.  You don't even disclose anybody from

15    Turner. So you're going to get some document, whether – if he's not there, then we need

16    to find out where he is so that you can have an MDT meeting where he is.  Where is he?

17         MR. GUPTA:  Well, I mean, if counsel is asserting that he is at Turner, then I

18    have the right to have rebuttal witness from Turner to show that he is not there.

19         MR. TYRKA:  No, no.  First off, I'll say it again.  I - I'm not asserting anything.

20         HEARING EXAMINER: I understand – I understand that.  But nobody's

21    disclosed anything about Turner.

22         MR. TYRKA:  Not only has nobody disclosed anything, once again nobody has

23    mentioned – any problem whatsoever with the identification of where the student is

88

1    through several opportunities to do so and so if there is any kind of problem then what I

2    would say to that is, that would be a defense for DCPS against the violation of this

3    agency.  In other words, if this HOD says schedule an MDT meeting and the fact is he's

4    not in school, well then obviously we can't come back and put DCPS on the hook for

5    violating that.  What the HOD we're talking about though, says schedule a meeting

6    through counsel.  Now, I think one solution to this would be – the hearing officer can do

7    an order that says – you know, parents shall ensure that he is registered at the local school

8    and DCPS shall a meeting or something to that effect.

9        MR. GUPTA:  No.  Where's --

10       HEARING EXAMINER:   The point is that the registration information is over

11   the prevue of DCPS.

12       MR. TYRKA:  My concern is this.  The hearing officer seems to be moving

13   towards taking additional information from DCPS on that fact.  I think that is

14   fundamentally unfair to the parent.  If DCPS wanted to put some information on about

15   that, they should have put it in their response.

16       HEARING EXAMINER: Well, but I'm trying, what I'm trying to do here is –

17   apparently, the child has not been determined eligible.

18       MR. TYRKA:  Right.

19       HEARING EXAMINER: We have several HOD's where the settlement

20   agreement is basically on the record.  The Hearing Officer's incorporating orders of

21   incorporating agreements.  They are trying to get completion of the special ed process to

22   determine whether the child is or isn't eligible, right?

23       MR. TYRKA:  We're trying to get that, yes.

1        HEARING EXAMINER:   Yes.  That's been going on a long time.

2        MR. TYRKA:  A long time.

3        HEARING OFFICER:  Okay.  So, in the best interest of the child, why can't we

4    see what the evaluations are done and for the interest of the child – besides this

5    (inaudible) serial stuff, why don't you want to see if he got the evaluations, good?  Then

6    you got that, then you can hold a meeting.  But if the child isn't there, then we've got to

7    find where he is.

8        MR. TYRKA:  Sure.

9        HEARING OFFICER:   I mean the parent might have put him in a charter school,

10   who knows.

11       MR. GUPTA:  And, I mean – in our data –

12       MR. TYRKA:  That I checked on.  That I checked on.

13       MR. GUPTA:  In our defense, DCPS is supposed to schedule the meetings with

14   counsel, if that's what he keeps saying, but, where do the files go when he leaves the

15   Care Center?  It has to go somewhere and how is some non-entity going to schedule a

16   meeting with counsel when he's not at a school?

17       MR. TYRKA:  Well, this non-entity had no trouble scheduling the resolution did

18   he?

19       HEARING EXAMINER: Well he scheduled it at the Care Center.

20       MR. TYRKA:  Yes.  They had no problems getting that resolution.  I mean, once

21   we brought a complaint, obviously they made no effort whatsoever to schedule anything

22   before that...  But in any event, I think the Hearing Officer is, is –

23       HEARING OFFICER:  I'm having –

22

90

1      MR. TYRKA:  looking towards solving it.

2      HEARING OFFICER:  I'm trying to get to the best interest of the child –

3      MR. TYRKA:  Yes.

4      HEARING OFFICER:  So there's no further delay.  Right?  And I don't – I'm not

5   going to order an independent evaluations if the current evaluations have already been

6   done, but I don't know what's been done.  So you're saying they have been done.  Please

7   submit them to me in a couple – in two business days, if you have them, and if you don't

8   have them, it indicates to me you don't have them, and then I'll order an independent.

9   And then, you know, I mean this thing has been going on a long time.  So, and then I

10  have to have to have some proof from you whether – I mean because you're in a position

11  to determine whether or not he's attending or not, not him.  So, you know,  you have—I

12  know I've seen these records lots of times about whether or not the child is registered

13  properly, not registered, attending or not attending so that's all, that's a matter within

14  your pervue, not within Hannik (phonetic) because he can't prove it.  I mean, he can get

15  the parent, I mean I've had cases where the parent - child says yes, I going to that school.

16  Well, I guess not.  So at this time, I can't even determine whether there's any violation or

17  anything until I see what you have there.  I don't have enough and nobody's been

18  disclosed from Turner that can answer that other question, so I can't log that in now.  But,

19  if you don't have any trouble with this, I think that's the fastest way to get an eligibility

20  meeting on track after all this time to see whether a child is or is not eligible.  If he's not

21  eligible, then you have no responsibility.

22      MR. GUPTA:  Okay.  I'll get the evals to you in two days, within two days...

23      HEARING EXAMINER: Okay.  Thank you.

91

1          MR. TYRKA:   Thank you.

2                                    [OFF THE RECORD]

3                                    [END OF HEARING]

4

5

6

7

8