IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KISHA HAWKINS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 07-278<br>) JDB<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**I.    DCPS WAIVED ITS ARGUMENTS AND CLAIMS**

In its Cross-Motion for Summary Judgment ("Cross-Motion"), the Defendant contends that it has been unable to locate D.C., and that the Plaintiff's requested evaluations are not warranted. The District of Columbia Public Schools ("DCPS") declined to raise either of these defenses prior to the administrative hearing, and therefore waived them. The Hearing Officer erred in considering those defenses, and the Court should not now consider them.

The Individuals with Disabilities Education Act ("IDEA") requires the local education agency ("LEA") to communicate with a due process complainant in three ways relevant to this case. The IDEA requires the LEA to send the parent, within 10 days of receiving a due process complaint, a written response containing very specific information, including:

> (aa) an explanation of why the agency proposed or refused to take the action raised in the complaint;
> ***

>(cc) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
>(dd) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(2)(B)(i)(I). The IDEA requires that the agency convene a "resolution session" with the parent prior to a hearing. 20 U.S.C. § 1415 (f)(1)(B). Finally, the IDEA requires each party to disclose all relevant evaluations no less than five business days prior to a hearing, and provides each party the right to prohibit the introduction of evidence that has not been so disclosed. 20 U.S.C. § 1415 (f)(2)(A); 34 C.F.R. § 300.512(a)(3).

The Plaintiff filed her Due Process Complaint on August 29, 2006. (R. at 51.) DCPS served its "Response to Due Process Complaint Notice" ("Response") weeks late, on September 24, 2006. (R. at 55.) The Response does not state or suggest that DCPS could not locate D.C., or that evaluations were not necessary. Id. It provides no explanation at all for its failure to comply with the prior Hearing Officer's Determination ("HOD"), as alleged in the Due Process Complaint. Id.

DCPS convened the resolution meeting regarding the Due Process Complaint on September 11, 2006. (R. at 31.)[1] At no point during the meeting did DCPS indicate that it was unable to find D.C., that the requested evaluations had been performed, or that they were unnecessary. Id. To the contrary, DCPS stated that "DCPS concurs that it did not that [sic] the meeting and offered three dates to hold the SEP meeting." Id. While the DCPS note-taker originally wrote, "Attempts made to schedule (MDT) meeting – contact

---

[1] The question of the admissibility of notes of a "resolution session" or "resolution meeting" held under the IDEA has been disputed since the IDEA was amended to require such meetings, effective July 2005. In the interest of candor, Plaintiff's counsel wishes to report that he has often argued that they are inadmissible. DCPS has consistently maintained that notes of these meetings are admissible. In a recent decision, this Court held that such notes are admissible. See Davis v. District of Columbia, 2006 U.S. Dist. LEXIS 94650, 19-22 (2006), adopted and approved, D.D. v. District of Columbia, 2007 U.S. Dist. LEXIS 1905 (2007). In the case at bar, DCPS offered its notes into the record and Plaintiff's counsel did not object.

2

of parent," she then crossed out that phrase, carefully initialing her edit. Id. Far from arguing that the evaluations were unnecessary, DCPS offered to perform them. Id.[2]

Five business days before the scheduled hearing, DCPS submitted its "Disclosure Statement" to the Plaintiff. (R. at 28-33.) DCPS' disclosures do not contain any evidence of attempts to locate D.C., and do not contain or otherwise refer to the existence of previously undisclosed evaluations. Id. The failure to disclose any documentation of efforts to schedule a meeting is especially notable in this case, because the prior HOD had dictated that "DCPS shall document with affidavits and proofs of service for any delay or delays [in scheduling] caused by Petitioner or Petitioner's representatives." R. at 49.)

In sum, DCPS declined to raise these defenses in its formal Response, took contrary positions and the mandatory resolution meeting, and failed to present any evidence suggesting these defenses in its mandated disclosures. In that way, DCPS abused IDEA procedures to set the Plaintiff up for its sandbagging at the hearing. In endorsing that behavior, the Hearing Officer made the administrative hearing anything but a "due process" hearing.

DCPS waived these defenses multiple times at the administrative level, and the Court should not entertain them now.

---

[2] DCPS' notes state, somewhat cryptically, "DCPS offers independent evaluation themselves." (R. at 31.) This phrasing was noted by the Hearing Officer and both parties at the hearing, who agreed that DCPS' intention had offered to perform the evaluations itself, not to fund independent evaluations. (R. at 78:11-79:1.)

**II.   THE RECORD DOES NOT SUPPORT THE DEFENDANT'S CONTENTIONS**

The Defendant, in its Motion, repeatedly contends that it has not held the meeting ordered by the July 6, 2006 HOD because it has been unable to locate D.C.. (Def.'s Mot. Summ J. 2-3, 8-9.) This assertion completely lacks evidentiary basis.

The Record contains no evidence of any attempt to schedule the ordered meeting prior to the complaint. Instead of evidence, the Defendant repeatedly cites repeatedly cites statements made by DCPS counsel in support of this claim.[3] Those statements lack any probative value under Fed. R. Civ. P. 56(e). See Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997) (granting summary judgment when adverse party's attorney's affidavit was not based on personal knowledge.); Magruder v. Schley, 18 App. D.C. 288 (D.C. App. 1901), (finding affidavit not based on the affiant's personal knowledge inadequate for summary judgment, because "suspicion is not proof; and it is equally true that belief and expectation to prove cannot be accepted as a substitute for fact."). Moreover, those bald assertions fall far short of the prior HOD's requirement "affidavits and proofs of service for any delay or delays [in scheduling] caused by Petitioner or Petitioner's representatives." (R. at 49.)

The absence of evidence of a DCPS attempt to comply with the prior HOD aside, the idea that D.C. could not be "located" is ridiculous. D.C. currently resides, as he has since at least September of 2005, with his mother at 3062 Stanton Road SE #103, Washington DC, 20020. (See R. at 2, 30, 41, 46, 51, 66; Compl. 1.) Every other

---

[3] In support of this assertion Defendant also cites statements from the transcript which were improperly attributed to Plaintiff's counsel, despite the Plaintiff's warning of the transcript problem. See Plaintiff's Motion to Correct the Administrative Record (June 29, 2007).

4

document aside, DCPS' own data report, recently offered as an exhibit to the Cross-Motion, lists that address, along with a telephone number. Cross-Motion, Exhibit A at 4.

### III.     THE DEFENDANT'S DEFENSES ARE IRRELEVANT

As reviewed above, the record wholly contradicts the Defendant's claim that it could not and cannot find D.C.. Even were that true, however, it would lack any relevance, because the prior HOD had ordered DCPS to schedule the meeting through counsel. (R. at 48-49.) There does not appear to be any dispute that DCPS made no attempt to schedule a meeting through counsel.

The Defendant further contends that the Petitioner's requested evaluations have been completed. While it now appears that DCPS did perform some evaluations of D.C. over the years, DCPS still never complied with the HODs, because DCPS never convened a meeting; the existence of the evaluations is therefore irrelevant to the Plaintiff's original claim of the violation of the most recent HOD and failure to hold a meeting.

Because DCPS never convened the meeting ordered by multiple HODs or otherwise met to review D.C.'s evaluations, the Record is absent any determination of their appropriateness. All of the evaluations provided by DCPS following the hearing predate the July 6, 2006 HOD ordering a meeting to determine necessary evaluations. That HOD was a "settlement on the record," with no findings of fact. While it is possible that these evaluations were not made available to the Hearing Officer who made the July 6, 2006 Determination, it is equally possible that those evaluations had been deemed inadequate and their replacement warranted.

The question of the appropriateness of the existing evaluations is more than theoretical. As of the filing of this Reply, D.C.'s most recent evaluation is the July 20, 2005 psychological evaluation disclosed by DCPS after the October 30, 2006 hearing, which had been conducted when D.C. was three years old. D.C. is now five. As one might expect, the measures used to evaluate a five-year-old differ substantially from those used to evaluate D.C. when he was three. Compare Exhibit 2; (R. at 9.)

The evaluations were not reviewed nor their appropriateness determined, as they should have been at the ordered meeting, and their existence has no effect on the Plaintiff's claim that DCPS failed to convene a meeting pursuant to the July 6, 2006 HOD.

## CONCLUSION

For the reasons presented above, the Court should deny the Defendant's Motion.

Respectfully submitted,

/s/_____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KISHA HAWKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 07-278 |
| v. ) | JDB |
| ) | |
| DISTRICT OF COLUMBIA ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S STATEMENT OF FACTS IN DISPUTE

The Plaintiff contends that there is no genuine dispute regarding the material facts of this case, and that she is entitled to summary judgment for the reasons presented in the Plaintiff's Motion for Summary Judgment. However, the Plaintiff presents this statement in the event that the Court determines any disputes noted herein to be material.

1. Undisputed.

2. Disputed. D.C. completed the pre-kindergarten program at the Center for Mental Health Head Start in June of 2005. The Plaintiff did not withdraw D.C. from the Center for Mental Health Head Start. Exhibit 1.

3. Undisputed.

4. Disputed: The Record contains no evidence of any attempt by DCPS to schedule the ordered meeting or to locate D.C.. The Defendant supports its statement only with a citation to a claim made at the hearing by counsel for DCPS. As counsel for DCPS has no personal knowledge of this "attempt," his statements are without probative value. See Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997) (granting summary

judgment when adverse party's attorney's affidavit was not based on personal knowledge.); Magruder v. Schley, 18 App. D.C. 288 (D.C. App. 1901), (finding affidavit not based on the affiant's personal knowledge inadequate for summary judgment, because "…suspicion is not proof; and it is equally true that belief and expectation to prove cannot be accepted as a substitute for fact."). DCPS disclosed no record of any such attempt at the hearing, despite the earlier HOD's requirement that DCPS would "document with affidavits and proofs of service for any delay or delays [in scheduling] caused by Petitioner or Petitioner's representatives." (R. at 28-33.) Moreover, in its own notes of the "resolution meeting" held prior to the hearing, DCPS deleted the statement: "Attempts made to schedule (MDT) meeting – contact of parent." (R. at 31.) Finally, D.C.'s location, and DCPS' knowledge of it, is clear in the Record. (R. at 41, 44, 46.)

5. Defendant's Statement # 5 is incomprehensibly vague. There is no stated time frame for which "DCPS could not locate D.C.," and the use of the term "locate" is similarly unclear. The Plaintiff does not dispute that, as of October 30, 2006, D.C. was not registered at Turner Elementary School. The Plaintiff disputes that DCPS made any attempt to "locate" D.C. in the usual sense of the word. See Statement #4, supra.

6. Disputed. The Record contains no evidence of any attempt by DCPS to "find D.C.."[1] D.C. currently resides with the Plaintiff at 3062 Stanton Road SE #103,

---

[1] In support of this assertion, the Defendant cites only to its new exhibit, without explanation. That exhibit was not disclosed at the administrative level, contrary to 34 C.F.R. § 300.512(a)(3) (each party to a hearing may "[p]rohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five business days before the hearing[.]").

There is nothing in the record authenticating the exhibit. In its Motion, the Defendant does not explain the exhibit's origin or its relevance. In the Defendant's Opposition to the Plaintiff's Motion for Summary

2

Washington DC 20020. (See R. at 41, 44, 46, 66; Compl. 1.) D.C. is currently registered as a non-attending student at Turner Elementary School. Exhibit 1.

7. Denied that the Plaintiff filed her Due Process Complaint Notice "pursuant to DCPS' inability to comply." The Due Process Complaint Notice filed on August 29, 2006 alleged DCPS' "[f]ailure to comply with a July 6, 2006 Hearing Officer's Determination[.]" (R. at 51.)

8. Undisputed.

9. Disputed. DCPS' September 24, 2006 "Response" does not detail any effort to comply with the HOD in scheduling an MDT Meeting. (R. at 55.) The "Response" simply states "DCPS has attempted to comply with HOD in scheduling an MDT meeting. DCPS continues its efforts in scheduling a meeting." (R. at 55.)

10. Undisputed.

11. Undisputed.

12. Undisputed.

---

Judgment, there is a footnote allegedly explaining the exhibit, but nowhere is there any authentication or authoritative explanation of the exhibit, which was allegedly produced from a database ("Encore") to which the Plaintiff has no access.

General authentication and verification issues aside, that database system has been all but condemned by the independent monitors of the Blackman-Jones IDEA class action against the District of Columbia. See Blackman v. District of Columbia, Civil Action No. 97-1629 (PLF) (D.D.C. 1997), Report and Recommendations of Evaluation Team as Filed by Monitor, February 8, 2007, at 4-21 ("Most [case analyses] require tracking down the student at a school that differs from the one listed as the attending school in Encore....Encore does not meet standard system requirements of...data quality control[.]...Information received from Encore is a moving target[.]...There are several hundred 'lost students'...No one is really sure where they are at any one time.").

Finally, the exhibit appears deeply flawed and/or irrelevant on its face, for at least three reasons. On the first two pages, it identifies D.C. as "Pre-Kindergarten, Age 2," though he turned three in 2004, and is now five. The third page reviews his "attendance" for the 2006-2007 school year at Head Start, a program for which he is unquestionably too old. The fourth and last page is partially illegible and completely incomprehensible. (The exhibit is also unredacted, though the Plaintiff does not wish to make an issue of the oversight.)

13. Defendant's Statement #13 is incomprehensibly vague; there is no stated time frame for which "DCPS could not locate D.C.." The Record contains no evidence of any attempt by DCPS to locate D.C.. See Statement #4, supra. The statement from the hearing transcript upon which the Defendant relies in support of this contention was misattributed to Plaintiff's counsel, as the Plaintiff warned the Defendant before it filed its Cross-Motion. See Plaintiff's Motion to Correct the Administrative Record (June 29, 2007).

14. The Plaintiff does not dispute that, at the hearing, Plaintiff's counsel argued that DCPS violated the July 6, 2006 HOD by not convening an MDT meeting. (R. at 72:1-7.) The remainder of Defendant's Statement #14 is argument.

15. Disputed that the Plaintiff requested "another set of evaluations." Before the hearing, DCPS representatives declined to make the Plaintiff aware of any existing evaluations. (R. at 31-32, 55-56.)

16. It is undisputed that Defendant's counsel contended its client made efforts to comply with the July 6, 2006 HOD and further contended that it was unable to locate D.C.. (R. at 72:13-18.)

17. It is undisputed that, at the hearing, Defendant's counsel contended that D.C. was neither registering nor attending Turner. However, the Plaintiff disputes that Plaintiff's counsel contended that D.C. was registered at Turner. The statement from the hearing transcript upon which the Defendant relies in support of this contention was misattributed to Plaintiff's counsel, as the Plaintiff warned the Defendant before it filed its Cross-Motion. See Plaintiff's Motion to Correct the

Administrative Record (June 29, 2007); (R. at 88:19); see also Def.'s Opp. to Pl.'s Mot. Summ. J. 4.

18. Disputed that DCPS produced such evidence at the hearing. (R. at 28-33.) Undisputed that after the hearing, and in violation of IDEA Response rules, evidence disclosure rules, and witness cross-examination rights, DCPS produced a letter from Turner's principal, Marcia S. Parker, in which Ms. Parker stated, "I affirm D.C. is not a student at this school, nor has anyone registered him as a non-attending student." See 20 U.S.C. §§ 1415 (f)(2)(A), 1415(c)(2)(B) and 1415(h)(2); 34 C.F.R. § 300.512(a)(3)

19. Disputed. There is no evidence of any stipulation at the resolution meeting. The only evidence of the resolution meeting consists of DCPS' notes of that meeting, unsigned by either party. (R. at 30-32.) The statement from the hearing transcript upon which the Defendant relies in support of this contention was misattributed to Plaintiff's counsel, as the Plaintiff warned the Defendant before it filed its Cross-Motion. See Plaintiff's Motion to Correct the Administrative Record (June 29, 2007).

20. Disputed. D.C. is currently registered as a non-attending student at Turner Elementary School. Exhibit 1.

21. Undisputed.

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. Undisputed.

26. Undisputed.

27. Undisputed.

                              Respectfully submitted,

                              /s/_____
                              Douglas Tyrka, #467500
                              Tyrka & Associates, LLC
                              1726 Connecticut Ave. NW, Suite 400
                              Washington, DC  20009
                              (ph) (202) 265-4260
                              (f) (202) 265-4264

## VERIFIED STATEMENT OF KISHA HAWKINS

1. I am over 18 years of age and competent to testify regarding the matters described herein.

2. I am the mother of D▓▓▓ C▓▓▓, a five-year-old student in the District of Columbia Public Schools system ("DCPS").

3. I did not withdraw D▓▓ from the Center for Mental Health Head Start in June of 2005.

4. D▓▓ completed the pre-kindergarten program at the Center for Mental Health Head Start in June of 2005.

5. D▓▓ is currently enrolled as a non-attending student at Turner Elementary School.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 7-6-07

*Kisha Hawkins* (signature)
Kisha Hawkins

Exhibit 4

07/09/2007 16:36  2027225293                    YAWPCS                          PAGE 01/01
07/09/2007 16:25  2022654264                TYRKA & ASSOCIATES                  PAGE 02/02

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KISHA HAWKINS, )
)
Plaintiff, )
) Civil Action No. 07-278
v. ) JDB
)
DISTRICT OF COLUMBIA )
)
Defendant. )

## VERIFIED STATEMENT OF DR. KEISHA MACK

1. I am currently licensed in the District of Columbia and Maryland as a clinical psychologist.

2. I currently work as an independent contractor for Maria Zimmitti & Associates performing psychoeducational, clinical, and functional neuropsychological evaluations.

3. I have been performing psychoeducational and clinical evaluations for the last eleven years, and functional neuropsychological evaluations for the last six.

4. Currently, as a standard testing battery for a psychoeducational evaluation of a five-year-old child, we perform the Beery-Buktinica Developmental Test of Visual Motor Integration, 5th Edition; selected tests from the Comprehensive Test of Phonological Processing; selected tests from Nepsy - A Developmental Neuropsychological Assessment; the Wechsler Preschool and Primary Scales of Intelligence 3rd Edition; the Woodcock-Johnson III Test of Achievement; a parent interview; a teacher interview if possible; and a review of records.

Date: 7/9/07

/s/ Dr. Keisha Mack, Ph.D
Clinical Psychologist

Exhibit 2–