UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KISHA HAWKINS,
on behalf of her minor child, D.C.,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 07-0278 (JDB)

MEMORANDUM OPINION

    Plaintiff Kisha Hawkins, on behalf of her minor child D.C., brings this action against the District of Columbia pursuant to the Individuals with Disabilities Education Act, as amended, ("IDEA"), 20 U.S.C. §§ 1400 et seq. Plaintiff challenges an adverse administrative decision rejecting her claim that defendant denied D.C. a free appropriate public education by failing to complete the evaluation process to determine if he was eligible for special education services. Currently before the Court are the parties' cross-motions for summary judgment. Upon careful consideration of the motions, the parties' memoranda, the administrative record, the applicable law, and the entire record, and for the reasons set forth below, the Court will grant plaintiff's motion for summary judgment and will deny defendant's cross-motion.

BACKGROUND

**I.    Statutory and Regulatory Background**

    Under the IDEA, all states that receive federal educational assistance must establish policies and procedures to ensure that "a free appropriate public education ["FAPE"] is available

to all children with disabilities residing in the State . . . ." 20 U.S.C. § 1412(a)(1)(A). A FAPE is provided through the development and implementation of an Individualized Education Program ("IEP") for each such student. The IEP describes the student's present academic level, determines the student's educational goals, and sets out required educational and related services, including the extent of the student's participation in a regular classroom. 20 U.S.C. §§ 1414(d)(1)(A). A student's IEP is developed by a team that includes the student's parents, a regular education teacher, a special education teacher, a representative of the school district, an individual who can interpret evaluation results, personnel with particular knowledge of the student if applicable, and sometimes the student himself. 20 U.S.C. § 1414(d)(1)(B). An IEP team may also be referred to as a multi-disciplinary team. See generally Winkelman v. Parma City Sch. Dist., 550 U.S. ___, 127 S.Ct. 1994, 2000-01 (2007); T.T. v. District of Columbia, 2007 WL 2111032, at *3 (D.D.C. July 23, 2007).

Before a State or local educational agency may commence the initial provision of special education services, it must first determine whether a student is a "child with a disability." A "child with a disability" is a child with a listed disorder or "specific learning disabilities" who, "by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A). The "child find" provisions of the Act require each state to have policies and procedures to ensure that "[a]ll children with disabilities residing in the State . . . who are in need of special education and related services, are identified, located, and evaluated." 20 U.S.C. § 1412(a)(3)(A). Once a child has been referred to an IEP team for an eligibility determination, the IEP team must conduct an "initial evaluation" which "shall consist of procedures (I) to determine whether a child is a child with a disability . . . within 60 days of receiving parental consent for the evaluation, or, if the

State establishes a timeframe within which the evaluation must be conducted, within such timeframe; and (II) to determine the educational needs of such child."  20 U.S.C. § 1414(a)(1)(C)(i).  The Act requires the local educational agency to:

> (A) use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parents, that may assist in determining -- whether the child is a child with a disability . . . ;
> (B) not use any single procedure as the sole criterion for determining whether a child is a child with a disability . . . ; and
> (C) use technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors.

20 U.S.C. § 1414(b)(2).  The Act also states that, as part of the initial evaluation, an IEP team shall "review existing evaluation data on the child" and that, "on the basis of that review, and input from the child's parents, identify what additional data, if any, are needed to determine" whether the child is disabled.  20 U.S.C. § 1414(c)(1).  Upon completion of the initial evaluation and determination of eligibility for special education, the team either indicates the reasons a student is ineligible or, if eligibility is found, provides a recommendation for an IEP to the parent.  D.C. Mun. Regs. tit. 5, §§ 3006, 3007.

If a parent disagrees with the eligibility determination (or the IEP, in the case of a disability finding), he or she has a right to a "due process hearing" before an impartial hearing officer, which shall be conducted by a State or local educational agency.  20 U.S.C. § 1415(f)(1).  The hearing officer's determination ("HOD") is a final decision, and any party aggrieved by a HOD may challenge it in a civil action.  20 U.S.C. §§ 1415(i)(1), (2).

**II.     Factual Background**

Plaintiff and her five-year-old son, D.C., reside together in the District of Columbia.  Pl.'s

Statement of Mat. Facts Not in Dispute ("Pl.'s Statement") ¶ 2.  On October 7, 2004, D.C. registered at the Center for Mental Health Head Start ("the Center"), a District of Columbia Public School ("DCPS") provider.  Apparently sometime thereafter, a referral was submitted on D.C.'s behalf for an evaluation and determination of whether he was eligible to receive special education services.  The underlying referral and compliance with the appropriate regulations has not been challenged.  Although this matter has led to four due process hearings and four HODs, DCPS still has not made a determination as to whether D.C. is eligible for special education services under the IDEA.

The first HOD in September 2005 ordered DCPS to convene a student evaluation plan meeting within fifteen days to determine what evaluations of D.C. should be conducted and to thereafter complete those evaluations.  Administrative Record ("AR") at 38-40.  Among other things, the HOD also required DCPS to convene a team meeting within ten days after the evaluations were completed to review the evaluations and "determine the student's eligibility for special education services."  AR at 39.  DCPS failed to convene the team as required by the HOD.  Pl.'s Statement ¶ 5.  On December 27, 2005, following another due process hearing, a subsequent HOD was issued, which ordered DCPS to convene a team meeting on or before January 25, 2006.  AR at 44.  DCPS was ordered to coordinate the scheduling of such a meeting through plaintiff's counsel.  Yet once again, DCPS failed to convene the meeting.  Pl.'s Statement ¶ 7.

A third due process hearing was held on June 13, 2006, and the ensuing HOD ordered DCPS to convene a team meeting to develop a student evaluation plan on or before August 4, 2006. AR at 46-50.  DCPS was ordered to coordinate the scheduling of the meeting through

plaintiff's counsel. If DCPS failed to comply with the order, plaintiff's counsel was to "contact the appropriate DCPS Placement Specialist and the DCPS Office of Mediation & Compliance to attempt to bring this case into compliance prior to filing a hearing request alleging DCPS's failure to comply." AR at 49. The order further provided that the deadline for the team meeting would be extended by the number of days attributable to plaintiff's failure to respond promptly to scheduling requests. DCPS was ordered to "document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives." AR at 49.

 The deadline came and went and DCPS failed to convene the meeting. Pl.'s Statement ¶ 9. Plaintiff's counsel therefore sent a letter to the Office of Mediation & Compliance on August 11, 2006, notifying DCPS of its noncompliance. AR at 59-61. When DCPS failed to respond, plaintiff filed an IDEA due process complaint on August 29, 2006. AR at 51-54. In that due process complaint, plaintiff listed the Center as D.C.'s current school, and plaintiff alleged that DCPS had violated the July 6, 2006 HOD by not contacting her counsel to schedule a team meeting and by not convening such a meeting by the prescribed deadline of August 4, 2006. AR at 51. Defendant did not file a notice of insufficiency regarding the complaint, but instead submitted a response on September 24, 2006, stating that it had "attempted to comply with HOD in scheduling [a team] meeting," and that it continued in its efforts to do so. AR at 55. As required by the IDEA, a resolution meeting was held on September 11, 2006, which left the matter unresolved. AR at 31.

 At the subsequent due process hearing, plaintiff's counsel was apparently surprised by two representations made by DCPS. First, DCPS asserted that it had been unable to "locate" D.C. AR at 72. By this point in time, D.C. had aged out of the head start program at the Center.

AR at 4.  Based upon the location of his residence, then, his home school should be Turner Elementary School.  According to DCPS, however, D.C. was not registered at Turner as an attending or non-attending student.  AR at 72.  Defendant therefore claimed that because DCPS did not know where to set up the team meeting, it had not done so.  DCPS also represented that three evaluations of D.C. had been completed back in 2004 and 2005.  AR at 8.  Because DCPS made these representations without any supporting documentation, the hearing officer asked DCPS to submit the evaluations along with information about D.C.'s school enrollment status within two business days following the due process hearing.  AR at 91.  DCPS thereafter submitted copies of a speech and language evaluation dated October 26, 2004, AR at 21-25; an early intervention program developmental report dated June 7, 2005, AR at 16-17; a psychological evaluation report dated July 20, 2005, AR at 9-15; and a letter from the principal of Turner Elementary School stating that D.C. was "not a student at this school, nor has anyone registered him as a non-attending student," AR at 8.

On November 7, 2006, the HOD was issued denying plaintiff's request for relief and dismissing the case.  The hearing officer concluded that "[c]ounsel for the student has failed to meet his burden of proof that DCPS denied a Free Appropriate Public Education (FAPE) to the student by failing to complete evaluations on the student and convene [a team] meeting."  AR at 4.  In his findings of fact, the hearing officer found that DCPS had conducted three evaluations as represented by DCPS's counsel during the hearing.  The hearing officer further concluded that because D.C. was not attending Turner Elementary School, DCPS could not "convene [a team] meeting at Turner."  AR at 4.

Plaintiff now seeks judicial review of the November 7, 2006 HOD.  Plaintiff argues that

the HOD should be overturned because the hearing officer erred in making no finding as to whether DCPS had contacted her counsel to schedule the team meeting and in failing to rule on whether DCPS violated the July 2006 HOD.  Plaintiff has therefore moved for summary judgment on the two counts of her complaint: (1) that defendant failed to provide a FAPE in violation of the IDEA, and (2) that defendant failed to develop a student evaluation plan in violation of the IDEA.  For relief, plaintiff requests that this Court: (1) order defendant to fund independent evaluations of D.C. and (2) "order DCPS to convene [a team] meeting within ten days of their receipt of these evaluations from the Plaintiff, and at that meeting to review the evaluations, to develop an appropriate individualized education program, to determine an appropriate educational placement, and to develop an appropriate compensatory education plan to compensate D.C. for DCPS's failure to develop [a student evaluation plan] since October 13, 2005."  Compl. at 6.

Defendant opposes plaintiff's motion and has cross-moved for summary judgment asserting that proper evaluations were conducted and that any attempt to convene a multi-disciplinary team would have been impossible because DCPS could not "locate" D.C.  Defendant therefore argues that the HOD should be affirmed.

## STANDARD OF REVIEW

Under the IDEA, "[a]ny party aggrieved by the findings and decision" rendered during administrative proceedings may "bring a civil action" in state or federal court without regard to the amount in controversy.  20 U.S.C. § 1415(i)(2), (i)(3)(A); 34 C.F.R. § 300.516(a).  The reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of

the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); 34 C.F.R. § 300.516(c).  On review of an HOD, the burden of proof falls upon the party challenging the administrative determination, who must "'at least take on the burden of persuading the court that the hearing officer was wrong.'"  Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)).

      The preponderance-of-the-evidence standard of review, the Supreme Court has held, does not authorize unfettered de novo review.  Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  Rather, consideration of the record impliedly requires courts to give "due weight" to the administrative proceedings, id., and "[f]actual findings from the administrative proceeding are to be considered prima facie correct," S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003).  Therefore, courts may not substitute their own views for those of the hearing officer, see Rowley, 458 U.S. at 206; Shaw v. District of Columbia, 238 F. Supp. 2d 127, 135 (D.D.C. 2002), and a court upsetting a hearing officer's decision "must at least explain its basis for doing so," Kerkam, 862 F.2d at 887.  At the same time, "the district court's authority to 'hear additional evidence at the request of a party,' and 'bas[e] its decision on the preponderance of the evidence' . . . 'plainly suggest[s] less deference than is conventional' in administrative proceedings."  Reid, 401 F.3d at 521 (quoting Kerkam, 862 F.2d at 887).  Where no additional evidence is introduced in a civil suit seeking review of an HOD, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record.  20 U.S.C. § 1415(i)(2)(C); Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997).

## DISCUSSION

Plaintiff is correct in asserting that the November 2006 HOD failed to make a determination on the issue raised in her due process complaint, namely, DCPS's compliance with the July 2006 HOD.  Although the hearing officer failed to make a determination on this issue, the record clearly demonstrates that DCPS did in fact violate the hearing officer's determination.  See Petway ex rel. J.P. v. District of Columbia, 2005 WL 3276349, at *6 (D.D.C. Aug. 10, 2005) (explaining that the court may examine the record to reach its own conclusions where the "HOD contains no discussion or conclusions of law relating to . . . issues" identified in the due process complaint).  DCPS had been ordered to convene a team meeting for D.C. on or before August 4, 2006, and it is undisputed that it failed to do so.  The July 2006 HOD also required DCPS to coordinate the scheduling of the meeting through plaintiff's counsel and to document "with affidavits and proofs of service" any delays caused by plaintiff or her counsel.  AR at 49.  DCPS did not contend that it had attempted to contact plaintiff's counsel to comply with the order, and in any event, it is undisputed that DCPS presented no affidavits or proofs of service evidencing any attempts to comply.  Plainly then, DCPS violated the July 2006 HOD.

Nevertheless, the hearing officer in November 2006 was apparently willing to overlook DCPS's shortcomings.  In one paragraph, the hearing officer asserted that DCPS had not denied D.C. a FAPE because it had conducted three evaluations and had been unable to convene a team meeting at Turner because D.C. was not a student at that school.  AR at 4.  The hearing officer did not elaborate any further than that, and he failed to cite any law to support his conclusions.  As the D.C. Circuit has noted, "a hearing decision 'without reasoned and specific findings deserves little deference.'"  Reid, 401 F.3d at 521 (quoting Kerkam v. Superintendent, D.C. Pub.

Schs., 931 F.2d 84, 87 (D.C. Cir. 1991) (internal quotation marks omitted)); Petway ex rel. J.P., 2005 WL 3276349, at *7.

Defendant makes little effort to support the November 2006 HOD.  Instead, defendant argues that any errors in the HOD are "without consequence" because of its counsel's assertion that DCPS could not "locate" D.C. at Turner Elementary School.  Def.'s Opp. At 2.  Because D.C. was not registered at Turner, the argument goes, there was no way a multi-disciplinary team meeting could be convened to evaluate and determine D.C.'s eligibility for special education services.  That argument is unavailing, however, because DCPS failed to present any evidence before the hearing officer to demonstrate that it had complied with its obligations to attempt to locate D.C.  To this date, DCPS still has not proffered any factual support to demonstrate that it took any steps to find D.C. and convene a team meeting.  The sad truth is that if DCPS had complied with the July 2006 HOD, by contacting plaintiff's counsel to coordinate a meeting, it is entirely possible -- indeed likely -- that D.C. could have been "located" then.

When plaintiff's counsel sent a letter to DCPS explaining that it had violated the July 2006 HOD, DCPS gave no response that it was having difficulty locating D.C.  When plaintiff's counsel took the additional step of filing a due process complaint, which listed the Center as D.C.'s school, DCPS never alerted him to any insufficiency in the complaint.  And when DCPS did respond to the complaint, it gave no explanation for its failure to comply with the HOD.  Even at the resolution meeting, DCPS failed to indicate that it had been unable to locate D.C.  Thus, although DCPS had numerous opportunities to do so, it completely failed to comply with the July 2006 HOD.

The "child-find" provisions of the IDEA impose an affirmative duty on state educational

agencies to "identify, locate, and evaluate" students who may be in need of special education services, and states must promulgate policies and procedures to fulfill that duty.  See Reid, 401 F.3d at 518-19 ("School districts may not ignore disabled students' needs . . . . Instead, school systems must ensure that '[a]ll children with disabilities residing in the State . . .  regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated.'") (quoting 20 U.S.C. § 1412(a)(3)(A)).  In turn, District of Columbia municipal regulations have placed the burden on the local educational agencies to "ensure that procedures are implemented to identify, locate, and evaluate all children with disabilities residing in the District who are in need of special education and related services, including children with disabilities attending private schools, regardless of the nature or severity of their disabilities."  D.C. Mun. Regs. tit. 5, § 3002.  Thus, as soon as D.C. was identified as a potential candidate for special education services, defendant had a duty to locate him and complete the evaluation process.  See District of Columbia v. Abramson, 493 F. Supp. 2d 80, 85 (D.D.C. 2007) (explaining that once a child is identified the local educational agency "is then obligated to move forward with the requirement of [IDEA] § 1414(a)(1) and determine whether the student is in fact a child with a disability").

DCPS's duty to locate disabled children extends to situations far more difficult than the one presented here, such as when a child is migrant or homeless.  D.C. Mun. Regs. tit. 5, § 3002. Here, locating D.C. should not have been a difficult task.  His address is located on numerous documents within the administrative record and has been consistent since at least December 2005.  AR at 41.  And, as noted above, DCPS could have contacted plaintiff's counsel at any time to inquire about D.C.'s enrollment status.  In fact, DCPS was ordered in July 2006 to consult

plaintiff's counsel to set up the team meeting. Once such an inquiry had been addressed to plaintiff's counsel, he could presumably have worked with his client to resolve the situation. Instead, DCPS allowed the deadline for convening the multi-disciplinary team meeting to pass without alerting plaintiff's counsel to the reason for the delay. Plaintiff's counsel then attended the due process hearing in November 2006 completely unaware that there was any confusion about D.C.'s enrollment status.

      DCPS's post-hearing submissions do not save the day. Marcia Parker's letter merely states that based upon her records <u>as of October 30, 2006</u>, D.C. was not registered as an attending or non-attending student at Turner Elementary School. AR at 8. This does not prove that D.C. was not registered at Turner prior to August 4, 2006 -- the date by which DCPS was to convene a team meeting. And even if D.C. was not registered there as of that date, DCPS cites to no law to support its position that this alone would simply make all of its IDEA obligations disappear as to D.C. In fact, the IDEA seems to contemplate the possibility that a student may not be enrolled in school at all prior to an initial evaluation since a FAPE is guaranteed to children as young as three years old. 20 U.S.C. § 1412(a)(1). Moreover, the applicable municipal regulations address such a situation: "In evaluating a child suspected of having a learning disability, in addition to the [other initial evaluation] procedures described [in § 3005], the IEP team shall ensure that at least one team member other than the child's regular teacher observes the child's academic performance in the regular classroom setting; or, <u>in the case of a child of less than school age or out of school</u>, observes the child in an appropriate setting for a child of that age." D.C. Mun. Regs. tit. 5, § 3005.10 (emphasis added). Thus, even the possibility that D.C. may not have been registered in any school does not, by itself, eradicate DCPS's IDEA obligations since D.C. was

previously identified for an eligibility determination.

The IDEA provides that "[a] free appropriate public education is available to all children with disabilities <u>residing in the State</u> between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." 20 U.S.C. § 1412(a)(1)(A). Accordingly, "DCPS has a fundamental obligation to provide FAPE to a child with a disability <u>residing in the District of Columbia</u>." <u>Abramson</u>, 493 F. Supp. 2d at 84 (citation omitted). It is undisputed that D.C. is a resident of the District of Columbia, and hence, DCPS must fulfill its IDEA obligations for this student.

In <u>District of Columbia v. Abramson</u>, the court relied on this language to determine that DCPS's IDEA obligations even extended to a student attending a "residential therapeutic private school in Madison, Connecticut," because the student maintained his D.C. residency. 493 F. Supp. 2d at 82. In <u>Abramson</u>, a request had been made to evaluate the student's eligibility for special education services before his parents enrolled him in the school in Connecticut. <u>Id.</u> When DCPS learned that the student was no longer attending school in the District of Columbia, it refused to complete the eligibility process and argued that Connecticut was now responsible for the student's evaluation. <u>Id.</u> The hearing officer and the court disagreed with DCPS's position that it had no further obligations to the student. Instead, DCPS was still obligated to "offer FAPE by evaluating the student, convening an eligibility meeting, determining eligibility, developing an IEP if the student is eligible and determining and offering an appropriate placement" because the student was still a resident of the District of Columbia. <u>Id.</u> at 85. The hearing officer and the court determined that DCPS's "refusal to continue the process was an error." <u>Id.</u> Thus, DCPS was ordered to complete the eligibility determination, and it was able to convene a multi-

disciplinary team meeting more than a year after the student had stopped attending schools in the District of Columbia.  Id. at 83.

Similarly here, DCPS's failure to continue the eligibility process was an error.  However, the D.C. Circuit has held that procedural violations are actionable only if they affect the student's substantive rights.  Lesesne v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006); accord Kingsmore ex rel. Lutz v. District of Columbia, 466 F.3d 118, 119 (D.C. Cir. 2006) (per curiam); T.T., 2007 WL 2111032, at *4; Schoenbach v. District of Columbia, 309 F. Supp. 2d 71, 79 (D.D.C. 2004).  Because DCPS failed to convene a team meeting, the lingering question is whether D.C. suffered substantive harm as a result.  The answer is clearly yes.

To this date, DCPS has not completed the eligibility evaluation of D.C.  Although DCPS submitted post-hearing evidence that three evaluations of D.C. had been conducted, this alone does not provide a FAPE.  The IDEA requires that, as part of the "initial evaluation," an IEP team shall review existing evaluations and then "identify what additional data, if any" are needed to make a disability determination.  20 U.S.C. § 1414(c)(1); see Kruvant v. District of Columbia, 2005 WL 3276300, at *9 (D.D.C. 2005).  Here, all three evaluations pre-dated the July 2006 HOD.  DCPS did not argue before the hearing officer that an IEP team or its equivalent had reviewed the evaluations, much less that a team had made a determination that no additional data was needed.  Thus, these evaluations standing alone do not fulfill DCPS's obligations to D.C. under the IDEA.

In summary, it is undisputed that D.C. was brought to the attention of DCPS with a request to evaluate his eligibility for special education services.  Yet, DCPS failed to make such a determination.  To excuse its failure to convene the multi-disciplinary team as ordered by the

July 2006 HOD, defendant solely relies on unsubstantiated assertions that it was unable to locate D.C. at Turner.  DCPS may be excused in certain situations for its failure to make an eligibility determination, if it actively sought to locate the student and documented its efforts to do so or if a student's parents refused to cooperate with school authorities.  See Patricia P. v. Board of Educ. of Oak Park, 203 F.3d 462, 469 (7th Cir. 2000) (holding that parents who failed to cooperate "forfeit their claim for reimbursement for a unilateral private placement").  But the Court is presented with no such evidence here.  On the record before this Court and before the hearing officer, DCPS simply refused to continue the evaluation process for D.C., an undisputed resident of the District of Columbia who had been identified as a potential candidate for special education services.  DCPS therefore denied D.C. a free appropriate public education.  See Abramson, 493 F. Supp. 2d at 86 (holding "that DCPS's refusal to continue the evaluation process for S.A., a resident of the District of Columbia, constituted a denial of FAPE").

## CONCLUSION

For the foregoing reasons, the Court finds that D.C. has not been provided a free appropriate public education in accordance with the IDEA.  The Court will therefore grant plaintiff's motion for summary judgment and will deny defendant's cross-motion.  Because this Court may grant such relief as it deems appropriate, the Court will order DCPS to consult with plaintiff's counsel to schedule a multi-disciplinary team meeting for D.C. within thirty days to determine his eligibility for special education services.  See 20 U.S.C. § 1415(i)(2)(C)(iii); see also Sch. Comm. of Burlington v. Mass. Dep't of Educ., 471 U.S. 359, 369 (1985).  Because the multi-disciplinary team will determine if any additional data is necessary to make an eligibility determination, the Court will deny plaintiff's request for defendant to fund independent

evaluations of D.C.  A separate order accompanies this memorandum opinion.

       /s/ John D. Bates
       JOHN D. BATES
    United States District Judge

Dated: March 7, 2008